(86 South. 140)

CLISBY v. STATE.   (6 Div. 269.)

(Court of Appeals of Alabama.   June 8, 1920.)

1. CRIMINAL LAW ⬥1092(16)—BILL OF EXCEPTIONS FILED IN TIME CONSIDERED, THOUGH DATE OF PRESENTATION NOT FILLED IN.

Where the bill of exceptions had to be filed by September 23d, and the trial judge failed to fill in the blank left before the words "day of September," but there was a recital that the bill was filed in time, and below the signature of the judge was the notation "Presented in this office this 9-4-19," the bill will be treated as filed within the time and may be considered; the other recitals showing presentation in time.

2. CRIMINAL LAW ⬥878(3)—CONVICTION OF RECEIVING STOLEN PROPERTY ACQUITTAL OF LARCENY.

Where one count of the indictment charged the larceny of money, and the other that defendant received the same knowing it to have been stolen, a conviction under the latter count was an acquittal of the charge of larceny.

3. RECEIVING STOLEN GOODS ⬥1—ELEMENTS OF OFFENSE.

To be guilty of the offense of receiving stolen money, it must appear that the money was stolen, that defendant received and concealed, or aided in concealing, the identical money, knowing it to have been stolen, and that she received it, etc., not having the intent to restore the same to the owner.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Receiving Stolen Goods.]

4. CRIMINAL LAW ⬥563—CORPUS DELICTI MUST BE PROVED.

There must be clear and unequivocal proof of the corpus delicti in criminal prosecution, as every criminal charge involves two things; one that the offense has been committed, and the other that accused was the author or one of the authors of it.

5. RECEIVING STOLEN GOODS ⬥8(3) — EVIDENCE HELD INSUFFICIENT TO SUSTAIN CONVICTION.

In a prosecution for receiving stolen money, evidence *held* insufficient to sustain a conviction, not showing that any money was stolen from the prosecuting witness, who was on a drunken spree, and, further, as not showing that the money found in defendant's possession had been stolen from him.

Appeal from Circuit Court, Jefferson County; H. P. Heflin, Judge.

Aline Clisby was convicted of buying, receiving, or concealing stolen goods, and she appeals. Reversed and remanded.

Prosch & Prosch, of Birmingham, for appellant.
No brief reached the Reporter.

J. Q. Smith, Atty. Gen., for the State.
No brief reached the Reporter.

BRICKEN, P. J.   The court's ruling in denying defendant's motion for a new trial is the only question presented for review.

This cause was regularly submitted upon its merits, so far as relates to this question, on April 22, 1920. The insistence is now made by the state that it affirmatively appears from the record that the bill of exceptions was not presented within the time required by law, and therefore this court must necessarily ex mero motu strike the bill of exceptions; the matter involved being jurisdictional in its nature.

[1] It appears that the judgment denying the motion for a new trial was made and entered on June 25, 1919. The presiding judge failed to fill in the blank date of the motion for the date of presentation, and this indorsement of itself reads: "Presented this the ——— day of September, 1919." If this were all, we are of the opinion that the necessary jurisdictional facts would not be thus shown, for in order to show that the bill of exceptions was presented within the time required by law, if this indorsement only was to be relied upon, it would be necessary for it to show that it was presented on or before the 23d day of September, 1919, or, in other words, within 90 days from the date of the judgment. However, we find this further indorsement by the trial judge:

"Wherefore, the defendant tenders this, her bill of exceptions, and prays that the same may

be signed and sealed and made a part of the records, which is accordingly done in term time and within the time prescribed by law on this the —— day of September, 1919."

This further indorsement also appears: "Presented in office this 9-4-19." We construe these numerals to mean the ninth month of the year (September) and the fourth day of that month, and in the year of our Lord 1919. It is true that this latter indorsement appears on the bill of exceptions just below and to the left of the signature of the presiding judge; but in order not to deprive any defendant from a review of their cases upon a technicality (and all appellate courts are reluctant in taking this course), this court will construe the indorsements above as a compliance with the law, and will consider the questions presented on their merits. It is possible, and very probable, that in copying the bill of exceptions the person who did so unintentionally made the unnecessary space with the machine upon which it was prepared, and thereby placed this most important indorsement out of line with the signature of the presiding judge. It is conceded, in fact the bill of exceptions affirmatively shows, that it was signed within the time prescribed, that is, 90 days after its presentation to the trial judge, and no question is raised as to the time within which the bill of exceptions was signed.

This defendant was charged in the first count of the indictment with grand larceny, that is to say, that she feloniously took and carried away from the person of one Jones the amount of money charged in the indictment. The second count charged that she did buy, receive, conceal, or aid in concealing this same money, knowing that it was stolen, and not having the intent to restore the same to the owner, etc.

The trial proceeded upon both counts of the indictment, resulting in a conviction of the defendant by the jury; they finding her guilty as charged in the second count of the indictment. Judgment was duly rendered against defendant in accordance with this verdict of the jury.

[2, 3] This verdict acquitted the defendant as charged in the first count of the indictment, and in order for her to be guilty under the second count it was necessary to show: (1) That the money in question had been feloniously taken and carried away from the person of Jones by some one; (2) that the defendant received, concealed, or aided in concealing this identical money or some portion thereof, knowing that it had been stolen; and (3) that she so received, concealed, or aided in concealing this money, knowing that it was stolen from the person of the said Jones, and not having the intent to restore the same to Jones, the owner. James v. State, 15 Ala. App. 569, 74 South. 395; Jeffries v. State, 7 Ala. App. 144, 62

South. 270; Thomas v. State, 109 Ala. 25, 19 South. 403; Sanders v. State, 167 Ala. 85, 52 South. 417, 28 L. R. A. (N. S.) 536.

[4, 5] It is apparent from the entire record, including the motion for a new trial, that the theory of the state was that one John Norfleet had stolen the money which Jones, the injured party, claims to have missed, and that this defendant received this money or a portion thereof from Norfleet; this was also made evident by the verdict of the jury, who acquitted this defendant of the actual larceny of the money, but convicted her of having received, etc., this money after it had been stolen. Norfleet was tried for the larceny of the money from the person of Jones, and was acquitted by the jury of the offense as shown by the motion for a new trial. It results that this case is very similar to that of Sanders v. State, 167 Ala. 85, 52 South. 417, 28 L. R. A. (N. S.) 536, where it was said: "There was some evidence of the 'corpus,' but none of the 'delicti.'"

The general rule as to sufficiency of evidence in criminal cases is, there must be clear and unequivocal proof of the corpus delicti. Every criminal charge involves two things: (1) That an offense has been committed, and (2) that the accused is the author or one of the authors of it. 2 Best on Ev. pp. 571, 572, cited with approval in Sanders v. State, supra.

In the instant case Jones, the alleged injured party, testified that he, together with his friend Arthur Williams, whom he met in the city of Birmingham, between Twenty-Fourth and Twenty-Fifth streets about 2 o'clock in the afternoon of the day in question, went to the home of defendant to get a drink; that he had on his person at the time $4,960, but with the exception of a few of these bills of money he was unable to give any description of the kind, character, or denomination of the money. He claims that he took only two drinks of whisky, after which he did not know anything further until about 11 o'clock that night; that when he awakened he was on the same bed he had been sitting upon when he took the drinks, and that when he awakened, this defendant and John Norfleet were in the room. He claims to have missed some money, stating: "I later on missed $634." On cross-examination he stated that he had counted his money on Monday before the Saturday he claims to have missed it; that after counting his money he had locked it up in his house at Flat Top, where he lived, and from that time on, that is, during the remainder of the whole week, he had not looked at his money or counted it. On the main trial of this defendant he testified, in trying to account for his money, that he had paid the firm of W. S. Brown something over $300 on Saturday, the 29th day of March, the day of the alleged larceny. But during the progress of

the hearing of the motion for a new trial, one Mr. Harry Jingold testified, on behalf of defendant, that he was the credit man of W. S. Brown; the substance of his testimony being that Jones had paid nothing on his account with W. S. Brown since the 17th day of March, 1919, and that he did not, as stated by Jones, pay anything whatever to W. S. Brown on Saturday, March 29th. On the hearing of the motion Jones himself was again examined with reference to this material matter, that is, the disposition of his money on the 29th day of March, the day on which the alleged offense is claimed to have been committed, and on this subject we quote from his testimony as shown by the record:

"I didn't have any money that was in that pocketbook that I had the $3,960 in, that I paid Mr. Brown with. * * * I don't remember now for certain that I paid Mr. Brown a bill that day. That is my recollection at the present time that I paid it. My mind was not in such a condition, when I testified that I paid W. S. Brown the $300, that I didn't know anything. I think I knew something, of course. I did not willfully come up here and falsely testified that I paid Brown. I didn't do it. Yes, sir; I reckon I did testify to it; it is on the records there. I didn't testify to it falsely. I did it with the best of my recollection and knowledge. When I testified that I paid W. S. Brown, I hadn't drank anything. I hadn't drank anything at all that day. I was up there this morning, when you were up there. I didn't go up there and try to get the man not to come down here to testify. I must have had the three hundred and some dollars that I paid W. S. Brown rolled up in my pocket, with a rubber band around it, or I wouldn't swear it. They don't keep books of everything that I buy. I buy and pay for some. I swear that I paid the bill up there and had the money rolled up with a rubber around it. Never had it in the pocketbook. I still swear that I had the money in my pocket rolled up with a rubber around it. I had done paid this money when I lost the other money. I paid it to W. S. Brown. My recollection is that I did pay it. I mean to say that I didn't pay W. S. Brown. Yes, sir; that is the way I got it fixed now. That was the way; I didn't pay that day. I don't think I paid him that day. That is my recollection. That is my recollection; I wouldn't be positive. It might not have been that day that I came in and paid him. I don't remember whether I had the money rolled up with a rubber band round it there in my pocket the morning of the 29th. It might have been another day. My recollection is that when I testified at the trial I stated that I put that money in my pocket on purpose to pay W. S. Brown. My recollection is that now that I had that money that day. I don't know where it went. I could not be positive what I done with the $300 if I didn't pay it to Mr. Brown."

It is difficult to ascertain from this testimony, as well as from other testimony of this witness, with any degree of certainty, just what did happen to this man and his money. On the main trial he testified, that he remained at defendant's house from the time he first arrived with Williams (2 o'clock p. m.) until 11 o'clock that night, and that during all this time he was in the same room of the house where Williams left him. But his friend, state's witness Williams, contradicts him in many material matters; one of the most important being that Williams says he went back to this same house at 5 o'clock that afternoon and that Jones was not there at that time, nor was any one else in the house at that time. Williams thus corroborates strongly the testimony of the accused, who testified that Jones left her house about five or ten minutes after Williams did, and never returned there until about 11:30 that night, at which time he staggered up the steps and was drunk (a statement not difficult to believe), broke into her house while she was preparing for bed, and proceeded to tear the things from her mantel and to otherwise destroy her household effects and abused her; that when he came in he claimed to have lost some money and charged her with having stolen it, etc.

Without further discussion of the testimony, from a careful examination thereof we are of the opinion that the corpus delicti was not proven, and for this reason the defendant should have been acquitted. Certainly it cannot be contended that the evidence offered was of that clear and convincing character which the law demands. In this case, as before stated, before the judgment of conviction rendered against this defendant should be permitted to stand, it was incumbent to show, first, that the larceny complained of had in fact been committed; second, that the $100 bill found in the possession of the defendant was a part of the money so stolen; and, third, that she received this bill of money, knowing that it was stolen, without the intention of restoring same to the owner. The evidence falls far short in each of these necessary requirements, for in the first place it is not at all certain that this man, who was evidently upon a drunken spree, consorting with whisky sellers and others of low character, had any money stolen from him at all. If he did not, the case falls here. Nor is it at all certain that the $100 bill found in possession of defendant was any part of the money this man Jones claims to have lost, and that defendant knew this. To the contrary, it is more clearly shown by the defendant herself and by the officers of the bank that she drew this money from the bank and that it actually did belong to her. But the law is that before this defendant was called upon to offer any explanation of her possession of the money it was first necessary to show that

this money was in fact stolen property and that it was stolen from Jones.

It appears that several of the grounds of the motion for new trial were well taken, and that it should have been promptly granted by the trial judge, and that in overruling the motion the court committed error necessitating a reversal of the judgment thereon. This is accordingly done, and a new trial is here awarded.

Reversed and remanded.