164 So. 761

## MOORE v. STATE.

### 8 Div. 268.

Court of Appeals of Alabama.

Dec. 17, 1935.

A. A. Carmichael, Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The first count of the indictment in this case, charged this appellant with the offense of burglary of the dwelling house of Mrs. J. C. Taylor. The second count charged the offense of buying, receiving, or concealing, etc., stolen property consisting of numerous articles of value (properly enumerated) of the aggregate value of $72.95, the personal property of Mrs. J. C. Taylor, knowing that the designated goods were stolen, and not having the intent to restore the goods to the owner, etc.

The evidence for the state tended to establish the corpus delicti of each of the

offenses charged in the indictment. This having been shown without dispute, the material and controlling question remaining was the alleged commission of the offense by the accused, or his participation therein, and connection in reference thereto.

The jury returned a verdict of guilty under the second count of the indictment, but found the defendant guilty of petit larceny only, and assessed a fine of $250. Failing to pay the fine and cost, or to confess judgment therefor, the court sentenced the defendant to hard labor for the county for a sufficient (and proper) term, to satisfy the fine and cost, and in addition thereto added three months' hard labor for the county. From the judgment of conviction, this appeal was taken.

█ The verdict of the jury operated as an acquittal of the accused as to two felonies originally charged in the indictment. Pending this appeal, the sentence aforesaid was suspended, and the bond of the appellant was fixed at $1,000, notwithstanding the conviction was for a misdemeanor only. So far as the record discloses, this appellant has been confined in the county jail since the day of the alleged commission of the offense. Excessive or prohibitive bail should never be required in a case of this character.

As stated, this appellant was convicted of the offense of buying, receiving, or concealing, etc., stolen property. In this case, by the verdict of the jury, a misdemeanor.

█ In order to sustain a charge of buying, receiving, concealing, or aiding in the concealment of stolen property, knowing that it was stolen, and not having the intent to restore the same to the owner, etc., it is necessary to show by the evidence, beyond a reasonable doubt and to a moral certainty: (1) That the goods in question had been feloniously taken and carried away, as charged in the indictment, by some one; (2) that the defendant bought, received, concealed, or aided in concealing these goods, knowing at the time that they were stolen; and (3) that he so bought, received, concealed, or aided in concealing these goods, knowing that they were stolen, and not having the intent to restore same to the owner. James v. State, 15 Ala.App. 569, 74 So. 395; Jeffries v. State, 7 Ala.App. 144, 62 So. 270; Thomas v. State, 109 Ala. 25, 19 So. 403; Sanders v. State, 167 Ala. 85,

52 So. 417, 28 L.R.A.(N.S.) 536; Aline Clisby v. State, 17 Ala.App. 475, 86 So. 140.

The evidence of the state tended to disclose that the searching party found in defendant's trunk in his home a small metal register only, which was stolen from the Taylor dwelling house. None of the other alleged stolen articles was found in the home or possession of defendant.

The defendant disclaimed all knowledge of the register being in his trunk, and testified that the first time he ever saw it, it was in the hands of one Summers, a state witness. Defendant's home was shown to have been about a mile and a half from the Taylor dwelling house. He testified (defendant) that he had never been to the Taylor dwelling house and did not know where it was, etc.

█ On the trial of this case, it was shown that dogs were used in trying to locate the perpetrator of the offense charged. Such evidence is admissible, but in so doing the state must first show that the dogs were trained to follow human tracks. In other words, to justify proof of the acts of dogs in trailing human beings, it must be shown that the dogs were trained to take the scent of human beings. In Little v. State, 145 Ala. 662, 39 So. 674, it was held: "In order that the trailing of bloodhounds from the place of the crime may be used as evidence against defendant, it must be first shown that the bloodhounds were trained to track human beings and could do so with a degree of accuracy." The court below, over the objection and exception of defendant, allowed state witness Clarence Moore to give testimony relative to two hounds used by the parties in trying to trail the guilty person, and to the action of the men in handling the dogs, etc., without complying with the rule above announced, and in the absence of any attempt to make such testimony competent. However, error to a reversal in this connection will not be held, as later in the trial the proper showings as to the dogs in question were made. The error indicated was cured.

█ In all criminal prosecutions the accused is entitled to a fair and impartial trial, free from prejudicial error. In Patterson v. State, 202 Ala. 65, 79 So. 459, 462, the court said: "The guilty, as well as the innocent, have a right to be tried in accordance with the law of the land.

The innocent ought not to be punished, and the law does not intend or provide that they shall be punished; and as to the guilty, the law provides that such shall not be punished except in the mode and manner provided by the law."

There are several insistences of error on this appeal. Some of these insistences are based upon the alleged illegal, unfair, and improper manner of cross-examination by the solicitor of the defendant, and of other witnesses who testified in his behalf. Other insistences of error are insisted upon as to the court's rulings in this connection.

■■■ The cross-examination of the accused ought to be carried on in a regular and orderly manner. This also applies to the cross-examination of other witnesses. The purpose of cross-examination is to sift the testimony of the witness given on his direct examination and develop facts tending to discredit it. The wide latitude allowed, as well as the discretion vested in the court, are not without limitations; or, as some times expressed, are not unbridled. Counsel are not within their province to propound illegal questions to any witness, nor to assert as facts matters not in evidence derogatory to the accused. A fair and impartial trial would be impossible of attainment in this event, and where it affirmatively appears this course of conduct has been indulged, or resorted to, in order to secure a conviction, a reversal of such conviction must necessarily follow.

In this case, numerous instances of the kind referred to occurred, some of which will be adverted to. On cross-examination of defendant's witness George Jackson, the first question propounded to him by the solicitor was: "George, how long have you been back from the penitentiary? How many sentences did you serve?" Witness answered, "I served forty-seven days." Q. "How many times? You were convicted for violating the prohibition law? You were convicted for stealing chickens. You, Ed Moore and another boy." Witness answered, "Yes sir I was." The solicitor then said: "Thought you said liquor. Once for liquor? Once for stealing? And Mr. Jackson was your witness then wasn't he? You say you and Ed Moore were arrested back there and convicted for petit larceny, back there in '31." Witness answered, "It was a different Ed Moore."

Defendant's witness Perkins testified as to the alibi of the accused, and also as to his general good character. First question on cross-examination by solicitor: "Never heard of him stealing until he stole from Mrs. Taylor?" This, as to the offense for which he was being tried.

On cross-examination of defendant, solicitor stated: "Now some negroes brought all those goods there that morning. Who was in the crowd?" On several occasions solicitor inquired about where the defendant worked, etc. These and other improper statements and questions of like import are shown by the record. This improper mode of examination of the witnesses was highly prejudicial, and the adverse rulings of the court in several instances in this connection constituted error to a reversal.

■■■ The inquiry of witnesses touching their former conviction for the offense of violating the prohibition law in order to impair the weight of their testimony and reflect upon their credibility was improper, prejudicial, and injurious. This line of inquiry should not have been attempted or indulged. A conviction for said offense does not come within the purview of section 7723 of the Code 1923, wherein it is provided, a witness may be examined touching his conviction of crime, for the crimes contemplated by said section are those which involve moral turpitude. Section 7722, Code 1923. It has repeatedly been held that a violation of the prohibition laws of this state, both as to misdemeanors and felonies, does not in contemplation of law involve moral turpitude, hence not a proper inquiry for the purpose of affecting the credibility of a witness. Abrams v. State, 17 Ala.App. 379, 84 So. 862; Lyles v. State, 18 Ala.App. 62, 88 So. 375; Lakey v. State, 206 Ala. 180, 89 So. 605; Ex parte Marshall, 207 Ala. 566, 93 So. 471, 25 A.L.R. 338.

Reversed and remanded.