# Edmonds *v.* The State.

### *Indictment for Larceny of Hog.*

1. *Larceny; what constitutes asportation.*—A conviction can not be had
for the larceny of a hog, on the testimony of a witness to this effect:
"Witness gave the defendant the axe, and got some corn, and by drop-
ping some of the corn on the ground tolled the hog to the distance of
about twenty yards; that defendant then struck the hog with the axe,
and the hog squealed, whereupon witness and defendant immediately
ran away, leaving the hog where it it was." These facts, without more,
do not show an *asportavit.*

FROM the Circuit Court of Russell.
Tried before the Hon. H. D. CLAYTON.

H. C. TOMPKINS, Attorney-General, for the State.

SOMERVILLE, J.—The indictment in this case charges the
defendant with the larceny of a hog, which, under the statute,
is made a felony, without reference to the value of the animal
stolen.—Code, 1876, § 4358. The only evidence in the case,
showing any caption, or asportation of the animal, was the tes-
timony of an accomplice, one Wadworth, who made the fol-
lowing statement: "That shortly after dark, on the 18th of
February last, witness met defendant near the horse-lot, on the
plantation of one Ilges; that the two went together to witness'
house, where the latter procured an axe, and they then returned
to the lot. Witness then got some corn, and after giving de-
fendant the axe, by dropping some of the corn on the ground

*tolled the hog to the distance of about twenty yards;* that the defendant then *struck the hog* with the axe, and the hog squealed, whereupon *immediately* both witness and defendant *ran away, leaving the hog where it was."* Upon this state of facts, the court charged the jury, that, if they believed the evidence, it was sufficient to show such a taking and carrying away of the property, if done feloniously, as was necessary to make out the offense of larceny.

We think the court erred in giving this charge, though the question presented is not free from some degree of doubt and difficulty. The usual definition of larceny is, "the felonious *taking* and *carrying away* of the personal goods of another." 4 Black. Com. 229. It is defined in Roscoe's Criminal Evidence, as "the wrongful *taking possession* of the goods of another, with intent to deprive the owner of his property in them."—*Ib.* 622. It is a well-settled rule, liable to some few exceptions, perhaps, that every larceny necessarily involves a *trespass,* and that there can be no trespass, unless there is an actual or constructive taking of possession; and this possession must be entire and absolute.—Roscoe's Cr. Ev. 623–24; 3 Greenl. Ev. § 154. There must not only be such a caption as to constitute possession of, or dominion over the property, for an appreciable moment of time, but also an *asportation, or carrying away,* which may be accomplished by any removal of the property or goods from their original *status,* such as would constitute a complete severance from the possession of the owner. 1 Greenl. Ev. § 154; Roscoe's Cr. Ev. p. 625. It has been frequently held, that to chase and shoot an animal, with felonious intent, without removing it after being shot, would not be such a caption and asportation as to consummate the offense of larceny.— *Wolf v. The State,* 41 Ala. 412; *The State v. Seagler,* 1 Rich. (S. C.) 30; 2 Bish. Cr. Law, § 797. So, it has been decided, that the mere upsetting of a barrel of turpentine, though done with felonious intent, does not complete the offense, for the same reason.—*The State v. Jones,* 65 N. C. 395. The books are full of cases presenting similar illustrations.

On the contrary, it is equally well settled, that where a person takes an animal into an inclosure, with intent to steal it, and is apprehended before he can get it out, he is guilty of larceny.—3 Inst. 109. In *Wisdom's case,* 8 Port. 507, 519, it was said, *arguendo,* by Mr. Justice GOLDTHWAITE, "If one entice a horse, hog, or other animal, by placing food in such a situation as to operate on the volition of the animal, and he *assumes the dominion over it, and has it once under his control,* the deed is complete; but, if we suppose him detected before he has the animal under his control, yet after he has operated on its volition, the offense would not be consummated." This principle is, no

[Blankenshire v. The State.]

doubt, a correct one; but the true difficulty lies in its proper: application. It is clear, for example, if one should thus entice an animal from the possession, actual or constructive, of the owner, and toll it into his own inclosure, closing a gate behind him, the custody or dominion acquired over the animal might be regarded as so complete as to constitute larceny.—2 Bish. Cr. Law, § 806. It is equally manifest that, if one should, in like manner, entice an animal, even for a considerable distance, and it should from indocility, or other reason, follow him so far off as not to come virtually into his custody, the crime would be incomplete.

The controlling principle, in such cases, would seem to be, that the possession of the owner must be so far changed as that the *dominion* of the trespasser shall be complete. His proximity to the intended booty must be such as to enable him to assert this dominion, by taking actual control or custody by man-ucaption, if he so wills. If he abandon the enterprise, however, before being placed in this attitude, he is not guilty of the offense of larceny, though he may be convicted of an *attempt* to commit it.—*Wolf's case*, 41 Ala. 412. It would seem there can be no *asportation*, within the legal acceptation of the word, without a *previously acquired dominion*.

The facts of this case, taken alone, do not constitute larceny. It is not a reasonable inference from them, that there was such a complete caption and asportation as to consummate the offense.

The judgment of the Circuit Court is reversed, and the cause is remanded.