# Kemp v. The State.

### Indictment for Larceny of Hog.

1. *Special grand jury.*—On the failure of the jury commissioners to select grand jurors for a term of the Circuit Court, in one of the counties included in the statute "to more effectually secure competent and well qualified jurors" (Code, pp. 151-8, note), that court may have grand jurors drawn and summoned under section 4136 of the Code, which is not repealed by the other statute, not being inconsistent with any of its provisions.

2. *Larceny; asportavit.*—A conviction may be had for the larceny of a hog, on proof that the defendant, having shot and killed it, cut its throat.

3. *Sufficiency of criminating circumstances; general charge on evidence.* When the offense charged is clearly proved, and there is evidence tending to identify the defendant as the perpetrator—as, his presence at the time and place, and his flight on the next day—it is for the jury to determine the weight and sufficiency of these criminating circumstances, and a general charge in favor of the defendant is properly refused.

4. *Evidence criminating another person.*—The commission of the offense charged being clearly proved, and the evidence connecting the defendant with it being entirely circumstantial, he can not adduce evidence tending to criminate another person, such as flight soon after the offense was committed.

[Kemp v. The State.]

FROM the Circuit Court of Sumter.

Tried before the Hon. SAM. H. SPROTT.

The indictment in this case was found at the April term, 1889, and contained two counts; the first charging the defendant, Jeff. Kemp, a freedman, with the larceny of one hog, the personal property of Tom White; and the second, with the larceny of two hogs. The judgment-entry on the organization of the court, at that term, contains a recital in these words: "It appearing to the court that the Board of Jury Commissioners have failed to draw grand and petit jurors to serve at the present term of the court, the sheriff is hereby ordered to forthwith summon eighteen persons, qualified to serve, as grand jurors for this term of this court, and thirty persons, qualified to serve, as petit jurors for the first week," etc.; and of the persons summoned as grand jurors under this order, two being excused, the others were organized as a grand jury, and returned the indictment into court. There was no objection to the indictment, nor to the organization of the grand jury, so far as the record shows; and the cause was tried on issue joined on the plea of not guilty.

On the trial, as appears from the bill of exceptions, Tom White, the prosecutor, testified in behalf of the State, that on a Saturday morning in December, 1888, while he was at the house of Edmund Knox, he heard two gun-shots fired in the swamp near by, and then heard a hog squeal; that he at once ran in the direction of the firing, taking his dogs with him; that the dogs ran ahead of him as he approached "Beaver Pond," and, as he was wading across the pond, he heard some one "trying to drive them off by scolding and kicking;" that some person ran off through the cane and undergrowth as he approached nearer, but he could not see who it was; and that he found two of his hogs lying dead, "both having been shot, and one having his throat cut." He testified, also, that he found tracks near the place where the hogs were lying, apparently made by some one running away, who wore boots; that Lee Jackson was wearing boots that day, and the defendant wore shoes; that Lee Jackson came up to the house of Edmund Knox about an hour afterwards, having a gun in his hands; that the defendant told him, on the evening of the same day, "to wait until Monday morning and he would put him on the track of the man who killed the hogs;" and that defendant left the neighborhood on the next day, and was arrested in Greene county some

[Kemp v. The State.]

time afterwards. W. Chaney, another witness for the State, testified that he went into the swamp that morning with the defendant, but had no gun; that they found Lee Jackson at the pond, having a gun in his hand; that Jackson and the defendant went up the pond together, on opposite sides, looking for ducks; that he soon heard the report of a gun, then another, and then heard a hog squeal; that he immediately ran away, but was soon overtaken by the defendant, who was bareheaded, and who ran out of the cane thicket towards him, having his gun in his hand. Said witness was asked, on cross-examination, "where Lee Jackson was, and whether he did not flee the country soon after the killing of the hogs." The court sustained an objection to each of these questions, and the defendant excepted. R. Hendrix, another witness for the State, testified that, "on said Saturday evening, he went into the swamp, to look for tracks and signs to find out who had killed the hogs;" and that he found the defendant's hat on the ground, "about thirty steps from where he had been told the hogs were found killed." The defendant, testifying in his own behalf, denied that he had killed the hogs, and said that, on hearing the first shot fired, he ran in the direction of the sound, thinking that Lee Jackson was shooting at ducks; that he saw Jackson fire the second shot at the hogs, and then ran away for fear he might be charged with shooting them. The defendant asked the court to charge the jury, that they must find him not guilty, if they believed the evidence; and he excepted to the refusal of this charge.

ALTMAN & PATTON, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—By section 17 of an act "To more effectually secure competent and well qualified jurors in the several counties of this State"—Acts 1886-7, pp. 151 to 158—all laws then in force in relation to jurors, their drawing, selecting or qualification, not in conflict with the provisions of the act, are continued in full force and effect. The act contains no provision for the organization of juries, in the event the officers charged with the duty of drawing and selection, should fail to perform it, and hence no juries be provided for any term of the Circuit Court; nor does it contain any provision at all in conflict with section 4316 of

[Kemp v. The State.]

the Code, which was then in force, and which provides for the organization of special juries by the court itself in the contingency referred to. That section was, therefore, not repealed by the act of 1887, and under it—no juries having been drawn and summoned by the commissioners, upon whom the duty devolved—the Circuit Court properly drew, summoned and organized the grand jury, which returned the indictment against the appellant.

The evidence in this case sufficiently establishes the *corpus delicti;* the asportation shown was sufficient.—*Croom v. State*, 71 Ala. 14; *Edmonds v. State*, 70 Ala. 8; *Frazier v. State*, 85 Ala. 17.

There was evidence tending to connect the defendant with the commission of the offense charged. His presence sufficiently near the scene of the crime to have been the author of it, and the fact that he was provided with the means or instrument of the kind with which the act was done, appears in evidence. It further appears that he hastily left the immediate vicinity, impliedly admitted knowledge of the guilty agent, by promising to tell who it was, two days afterwards, and that in the meantime he fled the neighborhood and county. This was certainly proper to go to the jury as a basis for an inference of guilt.—*Griffin v. State*, 76 Ala. 29. The effect of giving the general charge requested by the defendant, would have been to exclude this evidence from the jury, and to deny to them the right to pass on its sufficiency to support conviction. This charge can never be properly given, when there is a conflict in the testimony, or when any inference against the party in whose favor it is asked may be legitimately drawn from it. There was no error in refusing the charge.—*Paden v. Bellenger*, 87 Ala. 575; *Tabler v. Sheffield L., I. & C. Co.*, 87 Ala. 305.

There was no error in the exclusion of evidence which tended to show that Lee Jackson, a third person, on whom suspicion rested in connection with the offense charged, fled the county soon after the crime was committed.—*Smith v. State*, 9 Ala. 990; *Owensby v. State*, 82 Ala. 63.

The judgment of the Circuit Court is affirmed.