THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILLIAM
FRANK, Defendant.

City Court of Utica, May 9, 1941.

*Louis Krohn,* for the plaintiff.

*Smith Johnson,* for the defendant.

WALSH, J. This is a motion by defendant at the close of the
People's case for a dismissal of the information and the discharge
of the defendant on the ground that the People have failed to
establish a *prima facie* case.

Defendant Frank was employed by the complainant, Morris
Woloshin, president of Woloshin Furriers, Inc., as a porter or
handyman for several years. The People's case indicates that
Woloshin became suspicious of the defendant and that as a result
of this suspicion, Woloshin went to one Antonelli, the finisher in the
shop and suggested that Antonelli tell Frank that he (Antonelli)
needed some pieces of fur for repairing a fur coat at the Antonelli
home.

As a result of this conversation, Antonelli then approached
Frank. Antonelli testified: " A. I told him I needed a pair of
sleeves, collar, something like that. He said come in the other
room. He went there and he take a box on the shelf, lay it on the

table and he began to show me, this match? He show me other piece and said do you think this will match? He took two or three pieces and gave them to me. I went to the other room. I don't need those pieces. I did it just to — I put it under my table."

It should be remembered that the pieces of fur were not locked up and were in a box accessible to Antonelli himself at all times.

Woloshin thereafter came upstairs to the shop and Antonelli told him all that had transpired. Antonelli testified that "Mr. Woloshin came upstairs and asked me what I did. I showed them to him. Mr. Woloshin handled them in his hands. After that he say — suggesting to take it out for you."

A short time later, Antonelli told Frank that if Antonelli took the pieces out of the store, the package would stick out of his coat and if Woloshin had a customer in the store he might have to fit a coat which would disclose the fact that Antonelli was carrying a package out of the store. Antonelli then asked Frank to " do me a favor " and take the pieces to a friend of Antonelli's who had a store where Antonelli that same evening would obtain the package.

While there is some doubt in the testimony as to whether Antonelli or Frank put the fur pieces into a paper bag, there is no doubt that Antonelli wrote his own name on the paper bag. Antonelli testified that he neither offered nor gave any money to Frank for what Frank was to do.

Frank, according to the People's testimony which for the purpose of ascertaining whether a *prima facie* case was made out must be accepted as true, placed the paper bag containing the fur pieces under his topcoat. He was stopped by Woloshin when he came downstairs. Woloshin demanded to know what Frank had under his coat. Instead of answering, Frank ran back upstairs, taking the fur out of the paper bag. According to Detective Sutcliffe, Frank said he was trying to protect Antonelli Frank was arrested upon the complaint of Woloshin charged with petit larceny.

Defendant urges that the facts as related at most constitute an attempted larceny rather than a completed larceny because of the fact that Frank was apprehended before the crime could be consummated. The court cannot agree with this view. Shoplifting cases are examples of completed larcenies even though the persons have not yet left the premises. Accordingly, if Frank exercised some control over the fur pieces which indicated an intent to make them his own or to deprive the true owner of their use and enjoyment (even for the benefit of another), a completed larceny might be shown even though the property was not in fact removed from the store. " In such cases the accused has done his utmost to effect the commission of the crime, but fails to accomplish it for some

cause not previously apparent to him." (*People* v. *Moran*, 123 N. Y. 254.)

The difficulty in the prosecution of the present case concerns the element of trespass, which is essential to the crime of larceny. Trespass is the violation of individual property rights without the consent of the owner. From the undisputed facts of this case, and for the purposes of this motion, the question of the consent of the owner is vital.

The established line of cases upholds the proposition that the active participation of the owner in a scheme whereby his property is stolen, nullifies this essential element of trespass in the crime of larceny. " If an individual owner voluntarily delivers his property to one who wishes to steal it there is no trespass." (*People* v. *Mills*, 178 N. Y. 274, 288.)

The matter is clearly set forth in the case of *United States* v. *Whittier* (5 Dill. 35; 28 Fed. Cas. 591; Case No. 16,688 [1878]), where the court declared: " There is a class of cases in respect of larceny and robbery in which it is held that where one person procures, or originally induces, the commission of the act by another, the person who does the act cannot be convicted of these particular crimes, although he supposed he was taking the property without the consent, or against the will, of the owner. * * * The reason is obvious, viz.: the taking in such cases is not against the will of the owner, which is the very essence of the offence, and hence no offence, in the eye of the law, has been committed. The offender may be as morally guilty as if the owner had not consented, but a necessary ingredient of legal guilt is wanting."

The cases in New York have not dealt with this particular type of entrapment but in the case of *People* v. *DuVeau* (105 App. Div. 381 [1905]) the court in its dictum adopts the above point of view in stating that, " The first suggestion of the robbery came from the defendant. The authorities did not propose the commission of the crime. The person to be robbed had no part in the transaction. He was not even warned of the attempt that was to be made upon him. *This is entirely different from a case where the owner of property takes part in the act by aiding the robbers in their attempt.*" (Italics mine.)

Other courts have adopted this line of reasoning. (Archbold's Crim. Pleading Ev. & Prac. [29th ed.] 520; *The King* v. *Egginton*, 2 Bos. & Pul. 508; 126 Eng. Reprint, 1410; *Dodge* v. *Brittain*, 19 Tenn. 84, 86; 3 Chit. Cr. Law, 925; *State* v. *Covington*, 2 Bailey [S. C.], 569; 2 East, Pleas of the Crown, 665; *Alexander* v. *State*, 12 Tex. 540; *O'Brien* v. *State*, 6 Tex. App. 665; *Connor* v. *People*, 18 Col. 373; 33 P. 159; *People* v. *Collins*, 53 Cal. 185; *State* v. *Hull*,

33 Ore. 56; 54 P. 159; *State* v. *Adams*, 115 N. C. 775; 22 S. E. 722; *Williams* v. *State*, 55 Ga. 391; *Reg.* v. *Lawrance*, 4 Cox C. C. 440.)

This view of the law is in line with public policy which seeks to prevent rather than to aid the commission of crime. " It is safer law and sounder morals to hold, where one arranges to have a crime committed against his property or himself, and knows that an attempt is to be made to encourage others to commit the action by one acting in concert with such owner, that no crime is thus committed. The owner and his agent may wait passively for the would-be criminal to perpetrate the offense, and each and every part of it, for himself, but they must not aid, encourage, or solicit him that they may seek to punish." (*Love* v. *People*, 160 Ill. 501; 43 N. E. 713.) " The liability of men to fall into crime by consulting their interests and passions is unfortunately great, without the stimulus of encouragement. No State, therefore, can safely adopt a policy by which crime is to be artificially propagated." (*Commonwealth* v. *Bickings*, 12 Pa. Dist. Rep. 206.)

The People have failed to prove a *prima facie* case. Accordingly, the motion for the dismissal of the information and the discharge of the defendant is granted. Defendant discharged.