13 So.2d 430

## BLAKENEY v. STATE.

### 2 Div. 189.

Supreme Court of Alabama.

Feb. 25, 1943.

Rehearing Denied April 22, 1943.

Wm. N. McQueen, Atty. Gen., and Bowen W. Simmons, Asst. Atty. Gen., opposed.

McQueen & McQueen, of Tuscaloosa and Geo. O. Miller, of Livingston, for the petition.

BROWN, Justice.

The petitioner here was indicted, tried and convicted in the Circuit Court of Sumter County for grand larceny, the offense denounced by Section 331, Title 14, Code of 1940, Code 1923, § 4905, which makes the stealing of a "cow" or animal of the cow kind grand larceny.

The indictment charged that the defendant "feloniously took and carried away, to-wit, 17 cows or animals of the cow kind, the personal property of William A. Ganguet."

The offense is complete whether one or more cows or animals of the cow kind are stolen, the number is immaterial, except that at least one such animal must·

be feloniously taken and carried away, and laying the number under the videlicet, "to-wit," in the indictment meets the requirements of good pleading. McDade v. The State, 20 Ala. 81; Pollak v. Gunter & Gunter, 162 Ala. 317, 50 So. 155; Pharr & Beck v. Bachelor, 3 Ala. 237.

The indictment follows, substantially, the form prescribed by the statute and was not subject to the objection taken by demurrer. Code 1940, T. 15, § 259, form 66.

The evidence goes to show, as appears from the opinion of the Court of Appeals when read in connection with the court's oral charge, the briefs filed by the attorney general and the petitioner, that the defendant sent one of his servants or agents to show a cattle buyer from Montgomery, cattle which he, defendant, claimed to have purchased from two negro women, and said servant or agent and said cattleman went to the pasture of Ganguet, and said agent pointed out to the cattle buyer May a number of cattle grazing in the pasture. Said servant and the cattle buyer then returned to the defendant's store in Livingston and the sale and purchase of the cattle was discussed between defendant and May.

The defendant then sent another servant or agent with the one who had pointed out the cattle to May to round them up and "pen them," May going along to inspect them. The pen into which they were driven was Ganguet's loading pen and constituted part of the enclosure around the four hundred acre pasture. Seventeen head were driven into the pen and the gate or gap closed. Pending further negotiations between defendant and said cattleman, Ganguet in some way discovered that his cattle were so penned up and he went to the pasture, opened the gate and turned them back into the pasture.

The opinion of the Court of Appeals states:

"The impounding of the cattle was upon the instructions of Blakeney, the present appellant, when a cattle buyer from Montgomery was negotiating with him to purchase them. The State contended—and such was the tendency of its evidence—that there was an agreement or conspiracy between Blakeney and May (and perhaps others) to engage in such unlawful acts, and that May was acting in furtherance of the objects of the conspiracy in penning up the cattle. If so, then Blakeney would

be as guilty as May, even though not present when the actual larceny was perpetrated. * * * [The "May" here referred to is Willie May the agent of Blakeney, not the cattle buyer.]

"The transaction to sell the cattle to the Montgomery buyer was never effected and, as stated, the owner of the cattle later found them in the pen and released them. Able counsel, in forceful argument, urge that inasmuch as the sale of the cattle was never consummated and apparently abandoned (temporarily at least) that complete asportation was never effectuated, that therefore the larceny was never carried out, and the defendant was entitled to the affirmative charge. * * *"

The appellant, petitioner here, also requested the following charges in writing, which were refused:

"B. I charge you gentlemen of the jury that unless the evidence in this case convinces you beyond a reasonable doubt that the defendant and Willie May entered into a conspiracy to steal cattle belonging to William A. Ganguet, then you should find the defendant not guilty.

"C. I charge you gentlemen of the jury that before you can convict the defendant you must be convinced by the evidence, beyond a reasonable doubt, that the defendant and Willie May conspired to steal the identical cattle which were placed in the pen by Willie May and Sid Portis."

The defendant reserved exception to the following excerpts from the court's oral charge:

(1). "And I charge you that if you believe from the evidence in this case that these cattle of Mr. Ganguet's were in a large pasture, and were driven from a large pasture, and surrounded by and embraced in a tract of fifteen hundred acres approximately there was a four hundred acre pasture, and if you believe this defendant drove those cattle into a cattle pen inside of the four hundred acre lot, and closed the gap, why, that would be a taking and a carrying away as contemplated by the law."

Also the following excerpt:

(2). "After you consider all the evidence, if you are satisfied beyond a reasonable doubt that there was a conspiracy between the defendant and the other parties, and that the cattle were penned, and it was done with the purpose to steal them, it matters not about who the owner

of the cattle and it matters not if the owner of the cattle didn't lose anything by it, the asportavit and carrying away was contemplated when the cattle were wrongfully and corruptly put in the cattle pen."

The Court of Appeals held that said special written charges were refused without error, and, as a matter of law, the driving of the cattle into the loading pen and closing the gate or gap constituted caption and asportation, and that it was not error for the circuit court to so charge and instruct by said excerpts to which exceptions were reserved. As supporting this holding Phelps v. State, 6 Ala.App. 58, 60 So. 537, and the text of 32 Am.Jur. § 21, p. 906, and § 19, p. 905; 36 C.J. 749, § 48(b) at p. 750; People v. Frank, 176 Misc. 416, 27 N.Y.S.2d 227, and Marshall v. State, 118 Tex.Cr.R. 561, 2 S.W.2d 233, are cited.

■ The law is settled in this jurisdiction that, "To constitute larceny, there must be a severance of the possession of the owner and an actual possession by the wrongdoer. The severance of the possession of the owner and the actual possession of the wrongdoer may be but for a moment; the length of time they continue is not important; but, as appreciable facts, they must exist. * * * That the wrongdoer may be in such position or condition as enables him to exercise the power of taking and carrying away the thing alleged to be stolen is not sufficient. Until he avails himself of the position or condition, and exercises the power by the taking of possession, which, as we have said, involves an asportation, the offense is. not complete, however evil may have been his intent." Molton v. State, 105 Ala. 18, 16 So. 795, 796, 53 Am.St.Rep. 97.

Of the utterances used arguendo in Edmonds v. State, 70 Ala. 8, 45 Am.Rep. 67, and Croom v. State, 71 Ala. 14, made the basis of the pertinent text in 32 Am.Jur. and 36 Corpus Juris, cited by the Court of Appeals, this court, speaking through Brickell, C. J., said: "The accused may, with the intent to steal, have killed the hog, and may have been near enough to take possession and carry it away; yet the offense of larceny was not complete until the possession of the owner was severed by the taking of actual possession by the accused. If the expressions in the opinions in the cases of Edmonds v. State, 70 Ala. 8, [45 Am.Rep. 67], and Croom v. State, 71 Ala. 14, to which we are referred, assert a contrary doctrine, we cannot adhere

to them." Molton v. State, 105 Ala. 18, 21, 16 So. 795, 796, 53 Am.St.Rep. 97.

■ "To constitute a taking the prospective thief must have obtained at some particular moment the complete, independent, and absolute possession and control of the thing desired, adverse to the rights of the owner therein. Hence it is not a taking for one merely to compel another by threats to lay a thing down, or to strike the hand of another and knock money from it, or to jostle him, or tear his clothes, or break his belt, so that his watch or purse is dislodged from his person and falls to the floor or ground, if the prospective thief desists or is prevented from seizing the thing thus laid down or dropped; nor is the act of thrusting one's hand into the pocket of another and merely touching his money or purse, or of unscrewing a shirt stud in the bosom of his shirt, a taking, if the would-be thief does not grasp the money or purse, or does not entirely unscrew the stud, or if he drops the stud in the act of unscrewing it." 36 Corpus Juris, p. 748, § 45.

■ And Section 46 at page 749 treats "imperfect possession" thus: "For like reason if the possession of the would-be taker is imperfect in any degree, or if his control of the thing desired is qualified by any circumstance, however slight, the taking is incomplete and the act is only an attempt. Thus if goods, displayed on the counter of a shop or in front of it, are attached to the building by a cord, however slender, which the would-be taker does not sever, there is no taking, although the article itself is wholly in his grasp when he is detected and stopped. So the lifting of a watch from a man's pocket does not constitute a taking, unless the chain by which it is attached to his person is disconnected or broken."

In Phelps v. State, 6 Ala.App. 58, 60 So. 537, the court was passing on the correctness of the following excerpt from the oral charge of the court: "It is not every taking and carrying away or conversion that constitutes larceny. There must be at the time a felonious intent, else the taking and conversion is but a civil wrong. Likewise, in order to constitute larceny, there must be a severance of the possession of the owner, and actual possession by the wrongdoer. Though this severance need be only for a second, it must exist. To constitute the crime of larceny, it is not sufficient that the accused had control of the

article, or that he had the power to remove it; but there must have been an asportation of the thing alleged to have been stolen, and no matter how short the distance removed, or short the time he had dominion over it, still it may constitute larceny, if there exists a severance of the possession of the owner, and an actual possession and removal by the accused."

The court approved these utterances which are directly supported by the Molton case, supra, and Thompson v. State, 94 Ala. 535, 10 So. 520, 33 Am.St.Rep. 145. Following the approval of that charge, the court held, that the evidence in that case was sufficient to authorize a submission of the issues to the jury, but did not hold that the facts constituted caption and asportation as a matter of law.

People v. Frank, 176 Misc. 416, 27 N.Y. S.2d 227, was a case of entrapment where the taking was induced by the owner, and the court held that the evidence did not support the conviction because there was no trespass, being by consent of the owner.

In Marshall v. State, 118 Tex.Cr.R. 561, 2 S.W.2d 233, the state's witness testified after the man ran, the witness ran after him, fired twice at him and the man dropped the battery and escaped. The battery had been previously stored in a garage and was taken from the garage at night by the thief who carried it away with him and dropped it after he was detected.

■ The first excerpt from the oral charge relieved the state of the burden of proving the facts constituting the crime to the satisfaction of the jury beyond a reasonable doubt, and was an invasion of the province of the jury, in instructing them that the facts hypothesized in said excerpt constituted caption and asportation.

■ The second excerpt from the oral charge relieved the state of the burden of proving ownership as laid in the indictment, and was error.

■ The stated evidence was sufficient at least to support an inference of an attempt to commit larceny, an offense for which the defendant could be convicted under the indictment. Code 1940, T. 14, § 42.

If defendant conspired with others to steal cattle, either these cattle, or cattle owned by other people in this region, whether ownership of the cattle was known or unknown, and pursuant to such conspiracy these cattle were driven to and confined in a pen in such way as to give defendant through his agent or confederates exclusive dominion over them, with the present intent and purpose to deprive the owner of his property, the act of larceny was complete, although the cattle were left in the pen on the premises of the owner, and in the absence of the thieves he reclaimed them. Beckham v. State, 100 Ala. 15, 14 So. 859; Weaver v. State, 77 Ala. 26.

■■ Therefore, Special Charges B and C were refused without error.

For the errors noted the judgment of affirmance by the Court of Appeals, and the judgment of the circuit court, are reversed, and the case remanded for trial.

Reversed and remanded.

THOMAS, BOULDIN, and FOSTER, JJ., concur in opinion.

LIVINGSTON and LAWSON, JJ., concur in the result.

GARDNER, C. J., dissents.

GARDNER, Chief Justice (dissenting).

I am persuaded the opinion of Judge Simpson, speaking for the Court of Appeals, is in all respects correct and needs no further elaboration.

Reference may be made to the case of May v. State, Ala.App., 6 So.2d 521,[1] where May's conviction (the party with whom the defendant had been found by the jury to have conspired for the commission of this alleged larceny), was affirmed by the Court of Appeals, but the opinion of which was not here reviewed.

Finding myself in accord with these two opinions of the Court of Appeals, I think the writ should be denied, and, of consequence, respectfully dissent.

---

[1] 30 Ala.App. 390.