452 So.2d 1098 (1984)
Linda Gayle ROYAL and William Ellison, Appellants,
v.
STATE of Florida, Appellee.
Nos. 82-1050, 82-1055.
District Court of Appeal of Florida, Fifth District.
July 19, 1984.
*1099 James B. Gibson, Public Defender, and James R. Wulchak, Asst. Public Defender, Daytona Beach, for appellant Linda Gayle Royal.
James B. Gibson, Public Defender, and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant William Ellison.
Jim Smith, Atty. Gen., Tallahassee, and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
En banc.
PER CURIAM.
This criminal case concerns the definition of a "taking" as that term is used in the robbery statutes. Appellants Royal and Ellison were observed in a department store placing clothing in a plastic garbage bag. As appellants proceeded past the cash register and toward the front door a store detective, Ricciardone, attempted to deter them and was pushed aside by Ellison. Appellants left the store and were getting into an automobile outside when the store detective and two other store employees, Morris and Cox, attempted to recover the clothing and to detain appellants. As Morris attempted to grab the ignition key Ellison hit Morris. As Cox was pulling at Ellison in the automobile, Royal produced a pistol and pointed it at Cox's forehead. The three store employees retreated. The ignition key having become bent and useless appellants fled on foot and were apprehended. The pistol was found in the automobile but there was no evidence that it had been carried into the store. Appellants were found guilty of robbery while carrying a deadly weapon and appeal.
Section 812.13(1), Florida Statutes (1981), provides:
"Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another by force, violence, assault or putting in fear.
Appellants urge that the trial court erred in denying a motion for judgment of acquittal because the taking (caption) occurred and the theft of the store merchandise was completed, either (a) when appellants, with intent to steal, first obtained or took the clothing into their actual physical possession, or (b) when appellants, with intent to steal, took the clothing past the cash register or out of the store, and any subsequent force used did not elevate the completed theft into a robbery. Appellants also claim the motion for judgment of acquittal should have been granted because there was no evidence that the appellants, either of them, carried a firearm while in the store or that Ellison ever carried or used a firearm. Therefore, the question presented here is whether the taking was completed without the utilization of any force, assault or fear.
In State v. Douglas, 337 So.2d 407 (Fla. 1st DCA 1976), cert. denied, 348 So.2d 946 (Fla. 1977), the manager of the food market saw the defendant grab some pieces of meat and drop them into his co-defendant's shoulder bag. The manager intercepted the two as they attempted to leave the store by the front door and while the three were walking to the rear of the store the defendant struck the manager, and his codefendant began stabbing the manager. The defendants then ran out the front door. On appeal, the court stated the question was "whether a person who finds it necessary to resort to violence in order to escape with the property of another is chargeable with robbery." The court held that where the owner of property takes action to prevent a thief from taking his goods from his *1100 premises and the thief uses force in order to get away with the goods, the thief's use of force is concurrent with the taking and constitutes robbery. The court distinguished that situation from one in which force is used to prevent pursuit after the taking is complete.
In Stufflebean v. State, 436 So.2d 244 (Fla. 3d DCA 1983), the majority stated that whether the offense is a robbery rather than a larceny cannot turn on the fortuitous circumstance that, owing in part to the victim's quick reaction, the taker is required to use force in order to make good his escape with the property before getting outside the building where the property is located. The court in Stufflebean held that pursuant to the robbery statute, "force or threat of force is considered to be contemporaneous with the taking if that force or threat of force is used to overcome a victim's resistance to an attempted asportation." Id. at 245. The court further held that "where an offender gains possession of property of another without force and with intent to deprive the true owner of its use, but the victim gives instant and uninterrupted protest or pursuit in an effort to thwart a taking, and the offender then assaults the victim in order to complete a taking of the property and make good an escape, the offense is robbery." Id. at 246.
Accordingly, we hold that the pushing aside of the store detective by Ellison was, as in Douglas force involved in the taking of the property and that use of the pistol in the automobile occurred concurrent with the taking because possession of the property was still in continuing dispute, as in Stufflebean.
Appellants' convictions are
AFFIRMED.
COBB, C.J., and DAUKSCH, ORFINGER, FRANK D. UPCHURCH, Jr. and SHARP, JJ., concur.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
The majority en banc[1] opinion is in accord with the cases cited but those cases deviate from the true meaning of statutory robbery, section 812.13(1), Florida Statutes (1983), and from common law robbery and cases establishing a clear and meaningful distinction between common law larceny and robbery.
At common law, robbery was defined as "the felonious taking of money or goods of value from the person of another, or in his presence, against his will, by violence, or putting him in fear." Williams v. Mayo, 126 Fla. 871, 172 So. 86, 87 (1937). In construing the robbery statute, it will not be presumed, in the absence of language to the contrary, that the legislature intended to change the nature of the crime as understood at common law. Id. 172 So. at 87. In Montsdoca v. State, 84 Fla. 82, 93 So. 157 (1922), the supreme court explained the difference between robbery and larceny:
The criterion which distinguishes these offenses is the violence which precedes the taking. There can be no robbery without violence, and there can be no larceny with it. It is violence that makes robbery an offense of greater atrocity than larceny. Robbery may thus be said *1101 to be a compound larceny composed of the crime of larceny from the person with the aggravation of force, actual or constructive, used in the taking. 29 R.C.L. 1140; 34 Cyc. 1796.
An intent to steal is essential, so is violence or putting in fear. See 34 Cyc. 1799. The violence or intimidation must precede or be contemporaneous with the taking of the property. See Colbey v. State, 46 Fla. 112, 35 South. 189, 110 Am.St.Rep. 87.
The degree of force used is immaterial. All the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance.
93 So. at 159. See also McCloud v. State, 335 So.2d 257 (Fla. 1976).
The taking or caption, which is an essential element of common law larceny, meant only that the accused must acquire dominion over the property, a complete and independent possession superseding the possession of the owner, but actual possession for a momentary time was sufficient.[2] At common law, while the property must not only have been taken but must also have been carried away,[3] this element of carrying away or asportation was for the purpose of showing the complete termination of the owner's possession and the actual possession of the property by the wrongdoer[4] and was satisfied by the slightest removal,[5] it being stated that even "a hair's breadth will do."[6] To complete a larceny it was not necessary that the property be removed from the presence of the owner or from his premises. In Johnson v. State, 432 So.2d 758 (Fla. 1st DCA 1983), the court observed that the taking involved in robbery is basically equivalent to the asportation element of common law larceny and that the asportation required for the crime of larceny may be completed by the slightest removal of the article from its original position or place where the owner placed it or wanted it to be. The court observed that its holding was consistent with the general law on the subject:
In order to constitute robbery there must be a taking or asportation. In other words, it must appear that the property was taken from the possession of the victim into that of the robber. However, the crime is consummated when the robber acquires possession of the property, even if for a short time, and it is not necessary that the property be taken into the hands of the robber, or that he should have actually carried the property away, out of the physical presence of the lawful possessor, or that he should have made his escape with it. Further, the distance the property is taken may be very small, the slightest change of location whereby dominion of the property is transferred to the offender being sufficient to establish asportation.
432 So.2d at 759, quoting from 77 C.J.S. Robbery § 3.
*1102 Contrarily, the majority opinion holds that the taking in the instant case was ongoing even after the appellants had left the store and were in the parking lot, reasoning that the possession of the property was in "continuing dispute." Compare the statutory definition of "retail theft" in section 812.015(1)(d), Florida Statutes (1981), which certainly does not require that merchandise, the possession of which has been acquired (taken) with the wrongful intent to deprive, be removed from the store. See also, Haslem v. State, 391 So.2d 389 (Fla. 2d DCA 1980), which recognizes that when coupled with the essential intent to steal (animus furandi) a movement (asportation) of goods within a self-service store can constitute a theft. It cannot be logically held that in a "shoplifting" situation, the wrongful "taking" of the property with intent to steal, even within a store premises, is a completed act of larceny or retail theft and yet the same act is not a completed act for the purpose of permitting subsequent violence or fear to elevate the taking offense to robbery level.
From the very nature of robbery, the violence or putting in fear, because they are the means whereby the owner's resistance to the taking of his property is either overcome or prevented, must precede or be concurrent with the taking.[7] Fear, however, although the threats may have been previously made, must exist at the time the owner parts with his property.[8] If there is neither force, violence, assault nor fear when the property is taken, there is no robbery[9] and the subsequent violence or putting in fear by threats on the part of the thief, in an effort to escape or to prevent recapture the property, does not make it so, since such violence or fear is not contemporaneous with the taking and did not accomplish it.[10] This point of law is the subject of an annotation in 93 A.L.R.3d 643 entitled "Use of force or intimidation in retaining property or in attempting to escape, rather than in taking property, as element of robbery."
The required nexus between the taking and the force or fear is best illustrated by purse snatching and pickpocket cases. These may constitute either robbery or larceny depending on whether the force involved was applied solely to the property to accomplish its "taking", which results in a larceny,[11] or whether the force is applied to the person in order to accomplish the taking or to overcome resistance to the taking, which results in a robbery.[12]See Annot., Purse Snatching as Robbery or Theft, 42 A.L.R.3d 1381, 1385-1388.
In Colby v. State, 46 Fla. 112, 35 So. 189 (1903), the defendant was convicted of attempted robbery. The evidence showed that the victim, Bousman, while on a *1103 crowded street, felt the defendant's hand in his pocket, grabbed his arm and held it until the police arrived. The court reversed the conviction for attempted robbery stating as follows:
The court is of opinion that this testimony does not sustain the conviction had in this case. Had the defendant succeeded in securing the money in Bousman's pocket, the facts would not sustain a conviction for robbery. Our statute (section 2308, Rev.St. 1892) provides that "whoever by force, violence or assault, or putting in fear, feloniously robs, steals and takes from the person of another money or other property which may be the subject of larceny (such robber not being armed with a dangerous weapon) shall be punished," etc. The evidence does not disclose such force, violence, assault, or putting in fear as is contemplated by the statute, but merely an attempt to furtively abstract from the pocket of Bousman money or other valuables supposed to be contained therein. This might constitute an attempt to commit larceny, but not robbery. Where one stealthily filches loose property from the pocket of another, and no more force is used than such as may be necessary to remove the property from the pocket, it is not robbery under the statute, but larceny. (emphasis added; citations omitted)
35 So. at 190.
The court went on to state:
From the evidence it appears that after Bousman became aware that defendant's hand was in his pocket, he caught the defendant by the arm, calling upon Davidson and a policeman for assistance, and that a struggle ensued, in which the parties clinched. If the defendant struggled or clinched with Bousman in an effort to overpower him for the purpose of enabling him to secure the money in the pocket, there would be such force as the statute contemplates, but the force used merely in an effort to escape from the grasp of Bousman or to avoid arrest would not be such force as is contemplated by the statute. We think the testimony shows clearly that the tussling or clinching spoken of by the witnesses occurred in an effort to escape from Bousman and to avoid arrest, and not in an effort to secure the property. The testimony does not, therefore, support the conviction for an attempt to rob, and the court below erred in denying the motion for a new trial. (emphasis added)
Id.
In the robbery statute, section 812.13(1), Florida Statutes, the adjectival prepositional phrase "by force, violence, assault or putting in fear" relates to, modifies and limits the word "taking" which is the object of the sentence. The word "by" in this phrase is a synonym for "through" and is a function word indicating the means by which the taking must be accomplished to constitute robbery. This meaning of the statute is exactly in accord with the case law defining common law robbery.
In Andre v. State, 431 So.2d 1042 (Fla. 5th DCA 1983), the defendant snatched money from the hand of a victim while in the process of discussing a drug deal and when the victim pursued the defendant to regain the money, the defendant and his allies beat and knocked down the victim. This court, in holding the facts sufficient to support a conviction for robbery, referred to section 812.13(3) and explained that
the statutory definition of robbery includes not only the act of forcibly taking, but it also includes the use of force `in flight after ... the commission.'
Id. at 1043.
Andre erroneously interprets the redundant language in section 812.13(2)(c), Florida Statutes "in the course of committing the robbery" as combining with section 812.13(3) (which defines that phrase to include flight after the commission of a "robbery") to effectively amend and modify the common law definition of robbery in section 812.13(1) so as to (a) eliminate the requirement for a taking by force or fear in the definition of robbery itself and to (b) permit the substitution of "force or fear" that may occur after a non-violent taking *1104 and during a flight after commission of a theft as a result of efforts to regain possession of the stolen property or to apprehend the thief. Section 812.13(3) does not add an element to the offense of robbery as defined in 812.13(1). Section 812.13(1) is a complete definition for unarmed robbery and an information charging unarmed robbery under section 812.13(1) does not have to allege additional language from 812.13(2)(c) to the effect that in the course of committing the robbery the offender carried no firearm, deadly weapon or other weapon. This very contention was disposed of fifty years ago in Martin v. State, 100 Fla. 16, 129 So. 112 (1930). Therefore the language "in the course of committing the robbery" contained in section 812.13(2)(c) and its definition in 812.13(3) has nothing to do with alleging or proving a charge of unarmed robbery under 812.13(1). Section 812.13(2)(c) merely prescribes the penalty for unarmed robbery as it is defined in section 812.13(1), Florida Statutes.
In short, I agree with Judge Natalie Baskin in the dissent in Stufflebean v. State, 436 So.2d 244 (Fla. 3d DCA 1983), that the force or fear required for robbery must be the means by which the taking of property is accomplished and that element of robbery is not established by "force or fear" occurring after a non-violent taking. Robbery was intended only to protect an owner from being intimidated by force or fear in having his property wrongfully taken from him or from his immediate presence and from the use or threat of violence to accomplish such a taking and was not intended for the purpose of enhancing the punishment for a non-violent taking (a completed larceny) when violence occurs only as the result of a courageous owner endeavoring to recover his property or apprehend the thief. The usual penalty for unlawful assaults and batteries occurring in these instances is sufficient without introducing the notion that a taking of property is not complete as long as its possession is in "continuing dispute" and distorting the established law relating to the distinctions between the offenses of theft and robbery.
I would certify the following to be questions of great public importance:
(1) Are the words "obtaining" in the omnibus theft statute (§ 812.014(1), Fla. Stat.) and "the taking possession of" in the retail theft statute (§ 812.015(1)(d), Fla. Stat.) and "the taking" in the robbery statute (§ 812.13(1), Fla. Stat.) substantive equivalents having essentially the same meaning?
(2) Is the act of taking or obtaining described in these statutes complete when the wrongdoer has, with the necessary wrongful intent, acquired actual possession and dominion over the property to the exclusion of its actual or constructive possession by the owner or custodian?
(3) Does the use of force or fear in retaining property peacefully taken or obtained, or in an attempt by the wrongful taker to escape, rather than in the physical taking of the property, supply the element of force or fear essential to a robbery under section 812.13(1), Florida Statutes?
NOTES
[1] The curious legal scholar will wonder why this case was considered en banc. When the original appellate panel considered this case, two judges agreed Andre v. State, 431 So.2d 1042 (Fla. 5th DCA 1983), was in error and should be receded from and that this case should be reversed. The conflict with Andre is what caused en banc proceedings, during which a majority of the original panel apparently came to agree that Andre was either correct or not relevant. When this occurred the need for en banc proceedings to maintain uniformity in the court's decisions (Rule 9.331(a)) ended and this case should not have been decided en banc and without reliance on Andre but should have been returned to the original panel for disposition as was done in State v. Mayle, 406 So.2d 108 (Fla. 5th DCA 1981), cert. denied, 419 So.2d 1200 (Fla. 1982), and Mason v. State, 452 So.2d 1098 (Fla. 5th DCA 1984). See also In Interest of K.A.F., 442 So.2d 365 (Fla. 5th DCA 1983). In view of Sec. 4(a), Art. V, Fla. Const. (1972), there is a serious constitutional question as to the validity of en banc decisions in the district courts of appeal. Cases such as this and In Interest of K.A.F. illustrate the need for that question to be seriously addressed.
[2] United States v. Cohen, 274 F. 596 (3d Cir.1921); People v. Lardner, 300 Ill. 264, 133 N.E. 375 (1921); State v. Bell, 109 Kan. 767, 201 P. 1110 (1921); Com. v. Luckis, 99 Mass. 431 (1868); Gettinger v. State, 13 Neb. 308, 14 N.W. 403 (1882); State v. Chambers, 22 W. Va. 779 (1883); Rex v. Lapier, 2 East P.C. 557. 2 Burdick, The Law of Crime § 499 at 264 n. 24 (1946).
[3] Edmonds v. State, 70 Ala. 8 (1881); Driggers v. State, 96 Fla. 232, 118 So. 20 (1928); Barnhart v. State, 154 Ind. 177, 56 N.E. 212 (1900); People v. Mills, 178 N.Y. 274, 70 N.E. 786 (1904); Harrison v. People, 50 N.Y. 518 (1872); People v. Ashworth, 220 App.Div. 498, 222 N.Y.S. 24 (1927); State v. Alexander, 74 N.C. 232 (1876). 2 Burdick, The Law of Crime § 500 at 265 n. 37 (1946).
[4] Driggers v. State, 96 Fla. 232, 118 So. 20 (1928). 2 Burdick, The Law of Crime § 500 at 266 n. 40 (1946).
[5] Edmonds v. State, 70 Ala. 8 (1881); Lundy v. State, 60 Ga. 143 (1878); Delk v. State, 64 Miss. 77, 1 So. 9 (1886); State v. Williams, 199 Mo. 137, 97 S.W. 562 (1906); Harrison v. People, 50 N.Y. 518 (1872); State v. Carr, 13 Vt. 571 (1841). 2 Burdick, The Law of Crime § 500 at 265 n. 38 (1946).
[6] Baron Alderson in Reg. v. Simpson, 1 Dears. 421. 2 Burdick, The Law of Crime § 500 at 266 n. 39 (1946).
[7] II East P.C. 735; Thomas v. State, 91 Ala. 34, 9 So. 81 (1890); Thompson v. State, 24 Ala.App. 300, 134 So. 679 (1931); Clary v. State, 33 Ark. 561 (1878); People v. Stevens, 141 Cal. 488, 75 P. 62 (1903); State v. Miller, 53 Kan. 324, 36 P. 751 (1894); Dawson v. Com., 25 Ky.L.R. 5, 74 S.W. 701 (1903); State v. Sharpe, 326 Mo. 1063, 34 S.W.2d 75 (1930); Hanson v. State, 43 Ohio St. 376, 1 N.E. 136 (1885); Marks v. State, 69 Okla. Cr. 330, 102 P.2d 955 (1940).

Violence may Precede. If a man is struck down and rendered unconscious, and his money taken while he is still insensible it is robbery. Clary v. State, 33 Ark. 561; Rex v. Hawkins, 3 Car. & P. 392. And see People v. Jordan, 303 Ill. 316, 135 N.E. 729 (1922).
2 Burdick, The Law of Crime § 599c at 426 n. 64 (1946).
[8] I Hale P.C. 532; II East P.C. 714, 735. 2 Burdick, The Law of Crime § 599c at 426 n. 65 (1946).
[9] People v. Goldberg, 302 Ill. 559, 135 N.E. 84 (1922); Hall v. People, 171 Ill. 540, 49 N.E. 495 (1898); Monaghan v. State, 10 Okla. Cr. 89, 134 P. 77 (1913). 2 Burdick, The Law of Crime § 599c n. 66 (1946).
[10] II East P.C. 707; Thomas v. State, 91 Ala. 34, 9 So. 81 (1890); Gordon v. State, 125 Ark. 111, 187 S.W. 913 (1916), Jackson v. State, 114 Ga. 826, 40 S.E. 1001 (1902); Jones v. Com., 115 Ky. 592, 74 S.W. 263 (1903); State v. O'Neil, 71 Minn. 399, 73 N.W. 1091 (1898); State v. Holmes, 317 Mo. 9, 295 S.W. 71, 58 A.L.R. 652 (1927); State v. Fallon, 2 N.D. 510, 52 N.W. 318 (1892); Harman's Case, 2 East P.C. 736. 2 Burdick, The Law of Crime § 599c n. 67 (1946).
[11] See Colby v. State, 46 Fla. 112, 35 So. 189 (1903).
[12] See Martin v. State, 100 Fla. 16, 129 So. 112 (1930).