540

60 So.2d 379

## CROMER v. STATE.

### 2 Div. 831.

Court of Appeals of Alabama.

Aug. 26, 1952.

Reginald Richardson, Greensboro, for appellant.

Si Garrett, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen. (Maury D. Smith, Montgomery, of counsel), for the State.

HARWOOD, Judge.

This appellant stands convicted of larceny of two calves, the property of William E. Sherrer.

For the State Nick Morgan testified that on the night of 14 September 1951, while employed by Mr. Sherrer, he was driving one of Sherrer's trucks loaded with 49 of Sherrer's calves. The truck turned over and the calves were thrown or escaped from the truck. Morgan remained at the scene of the wreck until a bus came by. He boarded the bus and went into Demopolis for medical aid.

Mr. Sherrer testified that he was notified of the accident by telephone around 11:45 on the night it occurred. He proceeded to the scene of the wreck. Upon his arrival there he noticed an automobile parked nearby on the side of the road. The lights of this car were switched on and off several times, and later it was driven up and down the road past the wreck. This continued until around five A. M.

In searching for his calves Mr. Sherrer and his helpers found one calf with its hind legs tied together, and another one with its front feet tied, and the rope fastened to a wire fence. Both calves were found up on a bank by the side of the road.

All of the other calves were found except one, which was never located.

Lewis Owens testified he was in a road house near Uniontown drinking beer when someone came in and told the crowd about the cattle truck turning over. He drove out to the scene with a man named Terry.

When he got there he saw five men, including this appellant "among" 7 or 8 of the calves, tying them. This witness stated he saw two of the calves fall down during this process.

On cross examination this witness admitted he had drunk a considerable quantity of beer on the night in question and was pretty well drunk.

Mr. John Otts, Deputy Sheriff of Hale County, testified the appellant was arrested in Uniontown on 15 September 1951 in connection with this case. After proper predicate had been laid Mr. Otts testified that during the ride to Greensboro the appellant had said: "I'd like to know how in the hell you got onto stuff like this, about us going to get those cows."

Testifying in his own behalf the appellant claimed he had just arrived at the scene of the wreck when he saw three boys start to run. He did not know why, but he ran

after them, even crossing one or more fences. Eventually he walked back to Uniontown.

The appellant denied he had tied any of the calves at the scene.

Our chief difficulty has been in determining whether an asportation was sufficiently proven to sustain the charge of larceny.

In Croom v. State, 71 Ala. 14, and in Kemp v. State, 89 Ala. 52, 7 So. 413, our Supreme Court held that where an accused had shot a hog and caught hold of the hog and cut its throat, the act of cutting the throat of the animal was enough to establish the asportavit.

While some of the broader language in Croom v. State, supra, to that effect that such proximity to the intended booty as would enable the wrongdoer to assert dominion over it if he willed would suffice in establishing the asportavit, was disapproved in later decisions, see Molton v. State, 105 Ala. 18, 16 So. 795; Blakeney v. State, 244 Ala. 262, 13 So.2d 430, such statement made arguendo does not affect the conclusion of the court as to the actual facts of the case, i. e., that cutting the throat of the hog sufficiently established the asportavit.

By analogy we think the hobbling of the two calves just as strong a fact in showing the asportavit in this case.

Several objections were interposed during the trial below. In each instance they were general objections only, and since the questions did not seek evidence patently illegal, and obnoxious to all rules of evidence, the objections are of no avail on this appeal.

Appellant's requested charges were refused without error.

The four charges numbered 1, 1, 2, and 2 were affirmative in nature and properly refused under the developed evidence.

The remaining four unnumbered charges were each faulty in several aspects, and properly refused.

No motion for a new trial was filed.

This cause is due to be affirmed, and it is so ordered.

Affirmed.