93 So.2d 793

Moses ARTHUR

v.

STATE.

2 Div. 899.

Court of Appeals of Alabama.

May 15, 1956.

Rehearing Denied June 19, 1956.

Graham Kirkpatrick, Selma, for appellant.

John Patterson, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

PRICE, Judge.

The appellant, Moses Arthur, was convicted of grand larceny and was sentenced to serve a term of three years in the penitentiary. The appeal here is from that judgment.

The evidence presented by the State tended to show that M. M. Etheridge, his brother, and several other persons, including appellant's father, Andrew Arthur, pastured their cattle in adjoining pastures. Mr. Etheridge's pasture contained the only water in the area, and he had permitted his neighbors' cattle to use it for water. About the 10th of November 1954, Mr. Etheridge rounded up the cattle into a catch pen, preparatory to taking some of his cows to the stock yard for sale. Previous to the time the cattle were penned Mr. Etheridge notified all adjoining cattlemen to come and identify and separate such of their cattle as might have become mixed with his own. According to the State's witnesses appellant appeared on behalf of his father who was mentally unbalanced. The various neighbors pointed out their cattle in the pen. One unbranded cow was pointed out to the appellant as belonging to "Uncle" Josh Massey. The cattle were then turned out into a three acre tract fenced with four strands of barbed wire. The fence was in good condition and the gates were closed. The next morning the cattle were gone and about a week later they were found in Andrew Arthur's pasture. After the cattle were again rounded up several were found with old brands of W. O. Thompson and new brands belonging to appellant's father. The cow belonging to Josh Massey was found in appellant's pasture with a fresh "A", Andrew Arthur's brand, on it. When notified by Mr. Etheridge that he had apparently branded cattle belonging to some one else, appellant said they were his cows, but if Mr. Etheridge could prove they belonged to him he could take them.

The witness, Sammy Smith, testified that about the 10th of November he helped appellant brand some cattle. About 40 cows were driven into the catch pen, and appellant's father helped to separate them; that they let out about 20 head and left about 18 in the pen; that he saw Andrew and Mose standing over in the pen together, but he couldn't hear what they were saying; that he saw appellant brand some cows that already had a brand on them that appeared to be an "A", the Arthur brand, but that he did not see Moses brand any cows that appeared to have a circle "T" or a double "O" brand on them.

Josh Massey testified Mr. Etheridge came to his place on November 17 and told him somebody had branded his cow. He went to the pasture and identified his cow, which at that time had a fresh "A" branded on it.

The defendant testified the place rented by his father had 160 acres enclosed by a fence in which his father was supposed to have 47 cows. The pastures of Mr. Etheridge, Mr. Calloway, and his father, Andrew Arthur, adjoined. The fence was broken and for several years the cattle had roamed back and forth between the pastures. Defendant devoted only a part of his time to helping his mentally unbalanced father, working most of the time in Selma. In November the Etheridges decided to sell some cows. Some of the Etheridge cattle and most of Andrew Arthur's were not branded. In order to identify the Arthur cows the defendant, on a day when his father's mind appeared to be clear, asked him to come to the pasture and point out his cattle. The defendant did not know all of his father's cattle, just a few of the old ones. On about November 10 defendant employed Sammy Smith to help him brand the cows in his father's pasture. After getting the cows into the catch pen Andrew and defendant separated and let out the cows that had the brands of other people on them. After separating the cows defendant's father said there were no cows in the pen that did not belong to him.

Some of the cows let out of the catch pen had double O and circle T brands on them, but on none of the cows branded was there a visible brand of any other person. The branding was done about noon and about 20 cows were branded. The catch pen where the branding was done was next to a public road and so close to the road that if a truck was backed up to it the front wheels would be sitting in the road. The defendant testified he branded a frosty red cow. The Etheridges had several frosty red cows and his father had two. He denied that any cow was ever pointed out to him as being the property of Josh Massey. When accused of branding the wrong cattle

he told the men he didn't think he had done so, but that if the cows were theirs they could have them.

The defendant also offered evidence of his good character.

Counsel for appellant insists that the State has failed to offer sufficient legal testimony to show that accused took Josh Massey's cow and that the taking was felonious and argues in brief: "In view of the conflicting testimony as to the date of the supposed round up where Josh Massey's cow is alleged to have been pointed out to the accused; in view of the irreconcilable conflict in the description of the cow alleged to have been pointed out; in view of the testimony as to conditions existing at the time the cow is alleged to have been pointed out," the State has failed to prove that the cow was pointed out to defendant prior to the branding, therefore no intent has been shown to convert the cow to his use, or to deprive the owner thereof.

■    The evidence presented a question for the jury's determination as to whether defendant feloniously took and carried away the cow from the Etheridge pasture.

■■    Moreover, if the prospective thief shall have obtained at some particular time the complete, independent and absolute possession and control of the chattel, adverse to the rights of the owner therein, the taking is complete. 36 C.J. p. 748, Section 45 (3). And "a very slight asportation will be deemed sufficient." Molton v. State, 105 Ala. 18, 16 So. 795, 796, 53 Am.St.Rep. 97. The evidence of the penning and branding of the cow, if done by the defendant with the necessary felonious intent, was sufficient to establish the asportavit. Cromer v. State, 36 Ala.App. 540, 60 So.2d 379.

On the question of intent we paraphrase the words of Presiding Judge Bricken, in May v. State, 30 Ala.App. 390, 6 So.2d 521: The essential and controlling element was the intent of the defendant in penning and branding the cow as aforesaid. If the de-

fendant committed said act with a felonious intent to deprive the rightful owner of his property, the offense complained of is complete. If, on the other hand, his actions were innocent and free from any felonious intent, and if it was done under the honest mistake that the cow belonged to his father, as he strenuously insisted, he was guilty of no wrong, hence he should not have been convicted. The determination of this crucial point of decision rested with the jury, and from all the evidence adduced upon the trial the jury was under the duty to consider and decide this question.

 The defendant was not entitled to the general affirmative charge nor did the trial court err in refusing a new trial. Harris v. State, 17 Ala.App. 13, 81 So. 349; Cobb v. Malone, 92 Ala. 630, 9 So. 738.

■ Appellant's counsel complains in brief of the admission of evidence elicited by certain questions of the Solicitor. The brief points out that the errors complained of appear on pages 28, 29, 88, 89, 90, 97 and 99 of the transcript of testimony. We have carefully examined the record, and we find that on pages 28 and 29 no objection is shown to any question until appellant's counsel moved to exclude "this oration by the Solicitor, * * *. We objected in the beginning, Your Honor, will recall;" The court granted the motion to exclude the last statement and said, "That is the only statement I have had an objection or motion on, * * * whether it was a question or statement, I exclude it on your motion." No request was made for any further action by the court and no exception was reserved to the fact that the court excluded only the last question. No objection appears on pages 88 or 90. On page 89 the only objection raised by appellant was sustained by the court. On pages 97 and 99 the court granted appellant's motion to exclude questions or statements by the Solicitor. Under this state of the record nothing is presented for our consideration. Alabama Digest Criminal Law, 1036(1).

■ Requested charge 9 was properly refused. The act of larceny is complete if the present intent be to deprive the owner of the cow, Reynolds v. State, 245 Ala. 47, 15 So.2d 605; Fort v. State, 82 Ala. 50, 2 So. 477, and is otherwise faulty.

■■ Requested charge 10 was also refused without error. The proper hypothesis for a requested charge in a criminal case is belief from the evidence. Bush v. State, 211 Ala. 1, 100 So. 312; Wesson v. State, 251 Ala. 33, 36 So.2d 361. Furthermore this charge was fairly and substantially covered by the court's oral charge and written charges given by the court as requested by defendant. Alabama Digest, Criminal Law, 829(11).

The judgment of the trial court is affirmed.

Affirmed.