265 So.2d 180

Daniel Leon PAUL, alias

v.

STATE.

4 Div. 167.

Court of Criminal Appeals of Alabama.

May 30, 1972.

Rehearing Denied June 27, 1972.

397

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment charges the appellant with unlawfully buying, receiving, concealing, or aiding in concealing, one boat, two outboard motors, and a boat trailer. The verdict, judgment, and sentence fixed punishment at ten years imprisonment.[1]

The principal prosecuting witness, Mr. Norman Dismuke of Hanes City, Florida, testified that he owned an eighteen-foot Seabreeze boat with twin 40-horsepower Evinrude motors, and appropriate boat trailer, with the name "Miss Ruth" painted on both sides of the boat; that the boat was blue with white inside. Value of this was placed at $2000. Mr. Dismuke testified that he left the boat, motors, and trailer

Lewis V. Chesser, Andalusia, for appellant.

1. The first appeal of this cause appears as Paul v. State, 47 Ala.App. 115, 251 So.2d 246, cert. denied 287 Ala. 739, 251 So.2d 248.

at the home of a friend named Frank Daniels in Hanes City who had a carport for storage. Mr. Dismuke went into Cordele, Georgia, on business after leaving the boat and trailer with his friend. Mr. Dismuke stated that he came to Andalusia and found the boat, motors, and trailer at the Covington Courthouse in the custody of Sheriff P. R. Gantt. He also testified that he had reported this as being stolen to the Police Department in Hanes City, Florida, and also to his insurance carrier.

Gene Barton, witness for the State, testified that he saw the appellant, Danny Paul, whom he had known for several years, towing a boat with two outboard motors near his sandpit in Covington County, and overheard the appellant attempt to sell this outfit to a Mr. Curtis Franklin for $1500, and that he later changed the price to $1000. Mr. Barton stated that as far as he knew the boat belonged to Danny Paul, and that he was attempting to sell it.

J. C. (Curtis) Franklin testified that the appellant, Danny Paul, attempted to sell him a boat with twin Evinrude outboard motors and trailer with the name "Miss Ruth" painted on either side for some $1500. He stated that he saw this outfit at the sandpit belonging to Gene Barton, and he saw the appellant towing the outfit behind a white Oldsmobile from the sandpit back up to the Amvet Club and later delivered it to Harold Hixon's service station. Mr. Franklin also testified that he asked Harold Hixon to paint over the name "Miss Ruth" and change it to "Miss Sue" on each side and to change the color of the boat. Clarence Wiggins testified that one Fred Stanley telephoned him and asked that he change the color of a boat which had the name "Miss Ruth" on it, and to change the name to "Miss Sue," and that he painted the boat a different color.

Allen Edward Cook, former District Attorney of Covington County, testified that while serving as District Attorney he had a conversation in the Sheriff's office with the appellant, Danny Paul, at which time he read in full the *Miranda* warnings, and that this conversation took place on September 8, 1969. He further stated that a warrant had been issued for the appellant's arrest at the time, pursuant to Grand Jury indictment. He stated that appellant's wife was present in the Sheriff's office during this conversation, and that the appellant stated that he and his wife drove two vehicles from Hanes City, Florida, to Andalusia, and that his wife drove the Oldsmobile which towed the boat with the twin motors and trailer.

Sheriff P. R. Gantt testified that he was present in his office on September 8, 1969, when former District Attorney Allen Cook questioned the appellant, and that the appellant had made bond and had been allowed to return to his home in Florida. He further stated that while in the Sheriff's office the appellant stated that he and his wife had driven two automobiles from Hanes City, Florida, to Andalusia, driving together and towing the boat, motors, and trailer to Andalusia. The Sheriff stated that the appellant's statement was to the effect that his wife drove the car towing the boat with the motors on it. The Sheriff further testified that at no time was the appellant threatened, coerced, or induced by any promise, threat, or hope of reward to make this statement, and that former District Attorney Allen Cook had given full *Miranda* warnings prior to questioning the appellant.

Sheriff's Chief Deputy Arell Berry and Deputy Sheriff Sheldon Andrews testified that they went together to Wiggins' Paint Shop in Opp and impounded a freshly painted boat with twin Evinrude motors and trailer, and brought it back to the Sheriff's office during the summer of 1969.

The State next recalled Norman Dismuke, who testified that the appellant, Danny Paul, and his Florida attorney, Mr. Hallard J. Greer, telephoned him at his office in Hanes City, Florida, and stated to him that they would be glad to pay any expenses he incurred in getting his boat, motors, and trailer back, and offered to pay him his expenses, and that the appellant stated to

him, ". . . [Y]ou know if you don't go up there they won't have a case against me. . . ." Mr. Dismuke stated that he was not interested in expense money, but wanted to see justice done.

The appellant's wife testified in his behalf to the effect that she had been present in the Sheriff's office when the appellant talked with former District Attorney Allen Cook, but she denied that either she or her husband stated to him that they had towed the boat, motors, and trailer to Andalusia. She stated that she and her husband were former residents of Covington County, and visited relatives near Andalusia on several occasions.

The appellant presented the testimony of C. R. Wages and Bobby Craig, who testified they saw someone other than appellant driving a vehicle, towing a boat with twin motors on it near the sandpit at River Falls in Covington County.

The appellant took the stand in his own behalf and testified that he knew Norman Dismuke and knew that he was a truck broker engaged in hauling produce, primarily citrus. He stated that he had had conversation with Mr. Dismuke in Hanes City, Florida, and they had agreed that he might sell the boat, motors, and trailer for $1500, and that he would receive a 10% commission. The appellant admitted attempting to sell this boat to Curtis Franklin of Andalusia. Appellant further stated that when he heard there was an arrest warrant for him, he drove to Andalusia and posted bond with the Sheriff. He stated that, in addition to his wife being present at the time of talking with former District Attorney Allen Cook, there was a Mr. Berry and a Mr. Andrews present also, and that Sheriff Gantt was in and out of the office. Appellant denied that he and his wife stated then, or at any time, they had driven two vehicles, one towing the boat and motors in question, to Andalusia. Appellant stated that he had received a phone call, while at his father-in-law's house, that the boat, motors, and trailer were at the sandpit near Andalusia, and admitted attempting to sell the boat, first, to Gene Barton, and later to Curtis Franklin, but stated that he was doing it for Norman Dismuke. Appellant stated that he had nothing to do with having the boat repainted.

On rebuttal, the State called Gene Barton, and he stated that the appellant never mentioned any commission arrangement with him when he attempted to sell him the boat, motors, and trailer in question. He stated that his only negotiations were with the appellant who represented himself to be the owner of the boat.

The State also recalled Curtis Franklin, who testified the appellant never mentioned the name of Norman Dismuke to him, nor did he mention that he was selling the boat on commission basis, but that the appellant stated that he was the owner of the boat.

The State recalled Norman Dismuke, who testified that he did not even know the appellant and had never had any conversation with him concerning the sale of his boat. He stated that he had never authorized him to sell the boat and that he did not offer him a commission to do this, that, "That's just the farthest from the truth that he ever told in his life. There's not a bit of truth in it."

I

The appellant raises four contentions concerning his trial. Appellant first argues that his Florida attorney, Mr. Hallard J. Greer, was not allowed by the trial court to participate in the trial of the cause, though he did sit at the defense table and consult with appellant and his local counsel.

The rules governing admission to the Bar of Alabama were last reprinted in the July, 1971, "Alabama Lawyer." The rule governing admission of nonresident attorneys in an individual case is as follows:

"ADMISSION OF NON-RESIDENT ATTORNEYS PRO HAC VICE

"Any member of the Bar of another State or jurisdiction, actually engaged

in any cause or matter pending in any Court of this State, may be permitted by such Court to appear in and conduct such cause or matter while retaining his residence in another State without being subject generally to the rules regarding admission to the Bar of this State, provided that he first be introduced and recommended to such Court by a member of the Board of Commissioners of the Alabama State Bar, such introduction and recommendation to be either in person or by a written communication, otherwise such attorney may not appear as an attorney in any Court of this State."

There was no showing here by the appellant that there was any effort made to comply with the foregoing rule, and in the absence of such showing, the trial court correctly did not allow the Florida attorney to participate directly in this trial.

## II

■ Appellant next contends that the State failed to prove that the boat, motors, and trailer had been actually stolen. The appellant is not here charged with either burglary, larceny, or embezzlement.

Mr. Dismuke testified that he reported the boat, motors, and trailer missing to the Hanes City, Florida, police, and also to his insurance carrier. Middleton v. State, 27 Ala.App. 564, 176 So. 613, states that in order to sustain a conviction under Title 14, Section 338, Code of Alabama 1940, Recompiled 1958, the following:

"Before there can be a conviction there must be evidence sufficient to convince the jury, beyond a reasonable doubt, of every material ingredient of the offense charged. Included in the ingredients of this offense is a guilty scienter, which may be inferred by the jury from the facts and circumstances surrounding the entire transaction. Vacalis v. State, 204 Ala. 345, 86 So. 92."

We are of the opinion that the facts above set forth show that the material elements of the offense charged were here presented, and that the evidence being in conflict, the trial judge properly submitted this matter to the jury for their determination. See Franklin v. State, 47 Ala.App. 62, 249 So.2d 882, cert. denied 287 Ala. 735, 249 So.2d 885.

## III

The appellant argues that in two instances the district attorney's argument was prejudicial. From the record:

"In his closing argument to the jury, Mr. Prestwood made the following remark: 'Now I asked Danny Paul if he asked his lawyer to call Allen Cook and he denied it. His lawyer was sitting right here at the table, and he could have taken the stand and said he never asked Allen Cook to give Danny probation, if he wanted to, but to let this man plead guilty and give him probation. And that's why he didn't take the stand.'

"WHEREUPON, the following colloquy took place:

"MR. CHESSER: Your Honor, we object to such conclusions as that.

"THE COURT: Yes, I sustain your objection, and the jury is instructed to disregard that argument of the district attorney about why the defendant's Florida counsel did not take the stand. Do not consider it for any purpose whatsoever in this case.

. . . . . .

"Further in his closing argument to the jury, Mr. Prestwood made the following remark: 'Now I think that Danny Paul has had his day in court twice, and

. . . .

"WHEREUPON, the following colloquy took place:

"MR. CHESSER: We object to that kind of argument.

"THE COURT: Yes, sustain.

"MR. PRESTWOOD: I withdraw the statement."

In light of the trial judge's prompt instructions to disregard the above argument in the first instance, we do not believe such to be prejudicial error. Reynolds v. State, 31 Ala.App. 259, 15 So.2d 600, cert. den. 245 Ala. 47, 15 So.2d 605.

In the second instance above quoted, the objection to this argument was not only sustained, but also the statement was withdrawn. Because of this, we do not believe that prejudicial error is therefore shown. Rule 45, Revised Rules of Practice, Supreme Court of Alabama.

## IV

The appellant contends that the refusal of the following charges was error:

"1. The Court charges the jury that the evidence in this case is partly circumstantial, and before you would be authorized to convict the defendant, the evidence must be so cogent as to exclude every reasonable hypothesis except that of guilt, and if you are not so convinced, then you should acquit him.

. . . . . .

"5. The Court charges the jury that the evidence against the defendant is partly circumstantial, and his innocence should be presumed by the jury until his guilt is established by evidence in all the material aspects of the case beyond a reasonable doubt, and to a moral certainty.

"6. The Court charges the jury that the evidence against the defendant is partly circumstantial, and his innocence must be presumed by the jury, until the case against him is proved in all its material circumstances beyond a reasonable doubt; to find him guilty as charged, the evidence must be strong and cogent, and unless it is so strong and cogent as to show his guilt to a moral certainty, the jury must find him not guilty. (Jones, par. 6107)

"8. The rule is that if the State relies on circumstantial evidence to sustain a conviction and if from the circumstantial evidence you can reach two reasonable conclusions one of guilt and one of innocence then you must follow the reasonable conclusion of innocence and so acquit the defendant.

Where, as here, the evidence is both direct and in part circumstantial, there is no error in refusing the above charges as such would tend to mislead the jury by placing undue emphasis upon the circumstantial evidence. McCoy v. State, 170 Ala. 10, 54 So. 428. Since in this case the evidence was not wholly circumstantial, the refusal of the above charges was not error. Duke v. State, 257 Ala. 339, 58 So.2d 764; Gordon v. State, 147 Ala. 42, 41 So. 847.

We have carefully reviewed the record in the case at bar as we are required to do under Title 15, Section 389, Code of Alabama 1940, and find no error therein. The judgment is due to be and the same is hereby

Affirmed.

PRICE, P. J., and CATES and ALMON, JJ., concur.

HARRIS, J., recuses self.