TYSON, Judge.
The indictment charged the appellant with buying, receiving, concealing, or aiding and concealing one 1973 Ford F100 truck, two-tone blue, Identification No. F10YCQ47787, of the value of $2,000.00, the personal property of Melton Lance Autry. The jury found the appellant guilty as charged, and the trial court set sentence at five years imprisonment in the penitentiary. The appellant’s motion for a new trial challenging the weight and sufficiency of the evidence was duly overruled.
Melton Lance Autry testified he lived at Route 4, Box 201, Ringgold, Georgia. He testified that on May 24, 1975, he owned a blue Ford, two-tone, F100, XLT truck. Mr. Autry stated that the truck was dark blue on top, light blue on bottom and had a white camper with a bluish interior. He stated that he had been employed to play some country music at Willie’s Supermarket in Rossville, Tennessee, and had parked his truck in the parking lot at the supermarket before he began playing. He stated that he walked out to the parking lot between 10:00 and 10:30 P.M. and found his truck was missing. He stated he then telephoned the crime alert system in Chattanooga, Tennessee, and gave them the manufacturer’s identification number which was F10YCQ47787-73-8 and that it was an 8 cylinder pickup of the approximate value of $3,500.00. Mr. Autry stated that the Identification sticker, Bert Brown Ford, Chattanooga, Tennessee, was missing. He stated that in the camper was an electric guitar, about $45.00'worth of tapes, a tape case, some tools and a rain suit.
On cross-examination, Mr. Autry stated that the truck was taken on a Saturday evening between 10:00 and 10:30 from the parking lot at Willie’s Supermarket in Ross-ville and that he did not see this vehicle until he received a telephone call to come to the Harbin Motor Company the following Monday at Scottsboro, Alabama. He was told that he could pick up the missing truck there and that he had never authorized the appellant Murphy Labron Carroll to use the truck nor had he ever seen the appellant.
Betty Jean Paschal (Mrs. Thomas Paschal) testified she lived at Route 1, Dutton, in Jackson County, Alabama. She testified that she and her husband lived in a mobile home and that a mobile home in which the appellant, Murphy Carroll, lived was about fifteen or twenty feet from her home. She testified she was awakened on the night of May 24-25, 1975, around 3:00-3:30 in the morning as she heard a car door slam and heard some dogs barking, that she also awakened her husband. She testified she saw a two-tone dark blue and light blue pickup truck with a camper pull in the driveway next to the Carroll trailer. She testified that some lights were on, and she saw the appellant, Murphy Carroll, near the rear end of the truck squatted down at the bumper. She said she could see his hand move back and forth, and that another man was with him, and she could see him carrying things from the truck. Mrs. Paschal further stated that the other car left and that the appellant got into the truck and turned it around and parked it toward the trailer. She stated that she further watched the appellant as he got out and took a screw driver or wrench and was working around the steering wheel and that he would jump back and run toward the door of the trailer. Later, in the early morning, she watched him and that he had *434 a white plastic-like bottle and cloth on the left-hand back side of the truck and that he was scraping something. She said that the noise had awakened both her and her husband, and she saw him remove the camper and place it on the ground after unscrewing it. She said that early in the morning, her husband got up and left for a short time and then came back and that he told her he was going to call Mr. George Tubbs, the county investigator. She said that later that morning, Mr. Tubbs came by.
Thomas Paschal testified that he and his wife Betty lived at Route 1, Dutton, Alabama. He stated that they had been to church on the night of May 24, 1975, and had come home around 10:00. He stated that they went to bed and that his wife awakened him after she heard a noise and that he looked out a window of his trailer which had been boarded up with some plywood. He observed a light blue and dark blue Ford pickup truck sitting close to the appellant’s trailer. He said he also saw another car there and that it was around 3:30 in the morning.
Mr. Paschal stated that he and his wife began to watch the appellant and that the other car left. He saw the appellant carry some items from the truck and put them inside his trailer. He also said he saw the appellant filing something near the rear of the truck. He stated that he then got up and took his fishing tackle and put it in his car and acted as though he was going fishing, and he went and telephoned the county investigator, Mr. George Tubbs.
George Tubbs testified that he was employed as County Investigator for the Sheriff’s Department of Jackson County on May 24-25,1975. He testified that about 5:15 in the morning of May 25, he received a call from his dispatcher that Mr. Thomas Paschal wanted to talk to him. He testified that he went to the trailer residence within a quarter of a mile where the appellant, Murphy Carroll lived, and saw the appellant backing up a 1973 blue and white pickup truck and that it was two-tone blue. He saw that the camper had been removed from it and that he saw the appellant later come out and drive off in the truck. He said after the appellant left, he went over where the truck had been parked and noticed a switch had been taken out, that the tag had been removed, that there was some bright spots around the bumper, and that a tag with the name of Bert Brown Ford, Chattanooga, had been removed and left on the ground. He testified that he collected these filings, the tag and the Bert Brown sticker and when the appellant returned, they arrested him and took possession of the truck and took it to Harbin Motor Company in Scottsboro. From his investigation, he determined the identification number was F10YCQ47787.
Deputy Mike Wells testified that he received a telephone call on May 25, 1975, from Investigator George Tubbs and that based upon this information, he went before Judge John Haislip, of the Jackson County Court, and obtained a search warrant for the residence of the appellant, Murphy La-bron Carroll. He testified he and Investigator Tubbs arrested appellant and upon going into his home, found tapes, tape box container, and a rain suit. The appellant made a motion to exclude and also moved to quash the indictment that the State had failed to make out a prima facie case. These were overruled.
Appellant Murphy Labron Carroll testified he lived at Route 1, Dutton, Alabama, and had been living there about eighteen months since he moved back to Alabama from the state of Tennessee. He testified he worked as a carpenter for Parsons Company in Jackson County. He testified that in the month of May 1975, he had been to an automobile sale at Lafayette, Georgia, and had met a man named James Marsh. He testified that he talked with Mr. Marsh about purchasing a truck and that he told him he would bring a 1973 Ford truck over and that he did so on the early morning of May 25, 1975. He stated Mr. Marsh came to his home Sunday morning about 5:00 and had two more men with him. They discussed price at about $2,850, and the men were in a hurry as they wanted to go to the races in Huntsville. He stated he asked Mr. *435 Marsh for a bill of sale for the truck and that he wanted to check the mileage. He stated that he removed the camper cover from the truck because he wanted $200.00 more for this. He stated that he had not seen Mr. Marsh since he brought the truck over, but that he had made three or four trips to Lafayette, Georgia, looking for him.
The appellant presented the testimony of his wife, Doris Carroll, and before she testified, she was advised of her right not to testify being the wife of the appellant, and also her privilege against self-incrimination under the Fifth Amendment of the United States Constitution.
Mrs. Carroll took the stand and corroborated her husband’s testimony concerning Mr. Marsh bringing the pickup to their home on the morning of May 25,1975. She stated that the two men agreed upon a sale price of $2,850.00 and that her husband had made several trips to Georgia attempting to locate Mr. Marsh.
The appellant then presented several character witnesses who testified that his reputation for truth and honesty was good.
Appellant also presented the testimony of Clines Cuzzort who testified that he had observed the appellant during the month of May 1975 at a car sale in Lafayette, Georgia, and that he spoke to the appellant and that the appellant told him he was looking for an automobile to purchase for his wife.
I
In Johnson v. State, 41 Ala.App. 351, 132 So.2d 485, Judge Price stated:
“To establish the offense of buying or concealing stolen property it must appear that the property was stolen; that accused bought, received or concealed it knowing that it had been stolen; and that she had no intention of returning it to the owner. Moore v. State, 26 Ala. App. 607, 164 So. 761; Trail v. State, 39 Ala.App. 467, 103 So.2d 833.
“The corpus delicti may be proven by circumstantial evidence as well as by direct proof. Coates v. State, 36 Ala.App. 371, 56 So.2d 383; Wright v. State, 17 Ala.App. 621, 88 So. 185. “To meet the burden of proving that the property was stolen, it is necessary only that the state offer sufficient legal evidence to show a severance of the possession of the owner and an actual possession of the wrongdoer. It is immaterial how short the distance moved, or the length of time he exercised dominion over it. It may constitute larceny if there was a severance of the possession of the owner and an actual possession and removal by the wrongdoer. Phelps v. State, 6 Ala.App. 58, 60 So. 537; Molton v. State, 105 Ala. 18, 16 So. 795; Blakeney v. State, 244 Ala. 262, 13 So.2d 430; Arthur v. State, 38 Ala.App. 490, 93 So.2d 793.”
Our Presiding Judge, then Cates, J., in Stanley v. State, 46 Ala.App. 542, 245 So.2d 827, stated the trial court “in a receiving case approved inferring the requisite scien-ter from recent possession of stolen goods.”
This Court is of the opinion that the facts above set forth show the material elements of the offense charged, and that the evidence being in conflict, the trial judge properly submitted this matter to the jury for their determination. Paul v. State, 48 Ala.App. 396, 265 So.2d 180, cert. denied 288 Ala. 747, 265 So.2d 185; Johnson v. State, supra; Coe v. State, 53 Ala.App. 457, 301 So.2d 223; Hinkle v. State, 50 Ala.App. 215, 278 So.2d 218.
II
The appellant next argues that State’s Exhibit No. 3, a bumper sticker with the words Bert Brown Ford, Chattanooga, Tennessee, and the metal filings, should not have been admitted into evidence. Under the testimony of the owner, a similar sticker was missing from the truck in question when he saw it on Monday, May 26,1975, at Harbin Motor Company, which had been there when he left it at the parking lot of Willie’s Supermarket in Rossville, Tennessee. In light of the testimony of both Mr. and Mrs. Paschal, as well as of the County Investigator, Mr. George Tubbs, we are of the opinion that these items were properly admitted into evidence. Simmons v. State, *436 54 Ala.App. 291, 307 So.2d 96; Diggs v. State, 54 Ala.App. 414, 309 So.2d 123; Coe v. State, supra.
As noted by Mr. Justice Harwood, then Harwood, P. J., in Gaddis v. State, 39 Ala. App. 630, 106 So.2d 268:
“. . . The learned trial judge was most careful in his rulings to see that every right of the appellant was scrupulously protected. The record is, in our opinion, as clean as a hound’s tooth, and as free of error as any we have ever read.”
The judgment is therefore due to be and the same is hereby
AFFIRMED.
HARRIS, DeCARLO and BOOKOUT, JJ., concur.