TYSON, Presiding Judge.
The indictment charged Wayne Bolding with buying, receiving, concealing, or aiding in concealing, 158 cartons of cigarettes, 22 stereo tapes, 10 gold watches, and 3 silver watches, the personal property of J. E. Guest d/b/a Guest Stop and Shop Grocery. The jury found the appellant guilty as charged, and the trial court set sentence at four years imprisonment.
The appellant’s motion for new trial, challenging the weight and sufficiency of the evidence, was overruled.
*1373 James E. Guest testified that he operated the Guest Stop and Shop Grocery on July 11, 1974, near the Alabama-Georgia line. He testified that he had closed the store on the evening before, and when he came back to open the store on the early morning of July 11, 1974, he discovered that over 158 cartons of cigarettes, valued at $3.50 each carton, were missing; also over 20 stereo tapes, valued at $3.00 each, and a large number of gold watches, and some less expensive silver watches were missing. Mr. Guest testified that a day or two prior to the break-in, he saw the appellant, Wayne Bolding, come in his store and pay for $1.00 worth of gasoline. He said he remembered this occasion because the appellant had a mustache. He said that the aggregate value of the items that were missing from his store was over $1000.00.
On cross-examination Mr. Guest testified that also missing were some items of furniture and some personalized checks on two different banks, the Clay County Bank, and the First National Bank.
Cecil Humphrey stated that on July 12, 1974, he was working with Detective Fisher of the Montgomery Police Department on the burglary detail. He stated that he saw the appellant, Wayne Bolding, whom he knew, in a small delicatessen just off of Fairview Avenue on Gaston Street in Montgomery. He testified that he and his partner saw the appellant seated with his stepfather, one John Coley, and that they walked over to the table and asked the men what type of vehicle they were driving. He said that John Coley replied, “a 1966 Pontiac.” He stated that he and the other officer went outside, drove around the parking lot, but did not see a Pontiac automobile.[1] He stated that they did see a red and white pickup truck bearing a Mississippi tag. They observed Bolding and Coley get into the pickup truck and drive down Fairview Avenue, then onto the Interstate. He testified that they gave pursuit and finally pulled the truck over, that John Coley got out of the truck and came over to talk with them. He stated that he and Detective Fisher got out of the police vehicle to talk with Coley, and Captain Lynch, another officer accompanying them, remained in the car. At this point, he saw the appellant slide over under the wheel of the truck and take off. Captain Lynch gave pursuit, and the pickup truck was next discovered wrecked at the ramp of Heron and Holt Streets leading from the Interstate. He testified that the truck was impounded and that they found inside the truck 158 cartons of cigarettes, 22 stereo tapes, 10 gold watches and 2 silver watches, a metal basket type rack, and a black bag which contained 25 personalized checks with the name of Mr. and Mrs. J. E. Guest on them. Mr. Humphrey also identified some photographs of the truck with the contents therein.
On cross-examination Officer Humphrey testified that he had known the appellant for several years and he positively identified him as being in the delicatessen and getting in the pickup truck with John Coley.
Officer R. E. Lynch testified that he was a Captain with the Montgomery Police Department on July 11-12, 1974. He stated that on July 12, he was in the company of Officers Cecil Humphrey and R. E. Fisher, and that he saw the appellant seated in a delicatessen located on Gaston Avenue, just off Fairview Avenue. He testified that he observed the appellant get into a red and white Chevrolet pickup truck and drive with one John Coley down Fairview Avenue, then turn into the Interstate at I 65. He testified the officers gave chase, stopped the truck, and as they did so, Coley got out of the truck and came over to talk with the officers. Lynch stated that Bolding then slid under the wheel of the pickup truck, took off, and that he gave chase in the police car. This ended at Heron Street at the exit of I 65 where he saw the appellant wreck the truck, get out, and jump over the fence at the Interstate. He testified that *1374 he attempted to cut off the appellant, but that he got away.
On cross-examination Officer Lynch stated that he had known the appellant for several years, and he positively identified him as driving the pickup truck.
Montgomery Detective R. E. Fisher corroborated Officer Humphrey’s and Captain Lynch’s testimonies. Further, he stated that they did not see a 1966 Pontiac parked outside the delicatessen, but they did see the red and white pickup truck with a Mississippi tag, and that they pursued it. He testified that later that day, after impounding the truck, he went to the home of John Coley, and that his wife and two men, John Hall and Alton Sanders, were there. He observed a wristwatch in the possession of John Hall, which was the same brand name as others found in the pickup truck.
J. E. Guest was then recalled and identified the cigarettes, tapes, and watches as being among those missing from his store. He also identified the checks found in the black bag as being his property.
The appellant’s motion to exclude was overruled.
At this time the trial court gave the appellant a ten-minute recess to confer with his attorney before presenting his case.
Wayne Bolding testified that in July, 1974, he had been accompanied by one Alton Sanders and had driven to West Point, Mississippi to get a man by the name of John Hall. He stated that he had stopped at the Guest Stop and Shop store and bought $1.00 worth of gasoline and some transmission fluid for his automobile. He testified that he subsequently returned to Montgomery and obtained his stepfather’s automobile to go back and tow his car to Montgomery. He stated that John Hall accompanied him at this time. Upon his return to Montgomery, he stated that he was' seated in a delicatessen with his stepfather, John Coley, when Officers Lynch, Humphrey, and Fisher came in. He stated that he drove a Pontiac car to the delicatessen alone. He testified that while he was in the delicatessen his stepfather and another man came over and asked him if he wanted to move some stolen merchandise for them, and he told them, “No,” that he had just been released from prison and he did not want to get involved. He stated that he left the delicatessen alone in the Pontiac, drove to his mother’s home, where he picked up his wife, and then went to Auburn, Alabama. He admitted that he had a conviction in Arizona, Alabama, and Tennessee for burglary, drug abuse, and escape, that he had entered guilty pleas on these. He stated that the man with his stepfather in the delicatessen was one Abraham Gross and that he did not get into the pickup truck and leave with them.
On cross-examination Bolding stated that he had had a previous run-in with Detective Lynch. He admitted being at Mr. J. E. Guest’s store and buying the gasoline a day or two prior to July 11, 1974. He also testified that he knew there was a truck in Montgomery with some items from the burglary, but that he had nothing to do with it.
Detective R. E. Fisher was recalled and testified that he saw Donald Wayne Bold-ing in the delicatessen on July 12, 1974, with his stepfather, John Coley, and upon inquiry Coley replied that he was driving a 1966 Pontiac. He stated that a few minutes thereafter he saw the two men leave together and get into the red and white pickup truck. He stated that Coley was driving when they first followed the truck, and Bolding was seated on the passenger side. He also stated that Bolding took off in the pickup truck after they first stopped the vehicle.
Detective Cecil Humphrey was recalled. He stated that he was in the delicatessen and saw Bolding seated with his stepfather, John Coley. He stated he saw the two men come out and get in the red and white pickup truck together, and that Coley was driving when they entered the Interstate. After stopping the vehicle, he saw the appellant slide over and drive off in the truck.
I
In Johnson v. State, 41 Ala.App. 351, 132 So.2d 485, Judge Price stated:
*1375 “To establish the offense of buying or concealing stolen property it must appear that the property was stolen; that accused bought, received or concealed it knowing that it had been stolen; and that she had no intention of returning it to the owner. Moore v. State, 26 Ala.App. 607, 164 So. 761; Trail v. State, 39 Ala.App. 467, 103 So.2d 833.
“The corpus delicti may be proven by circumstantial evidence as well as by direct proof. Coates v. State, 36 Ala.App. 371, 56 So.2d 383; Wright v. State, 17 Ala.App. 621, 88 So. 185.
“To meet the burden of proving that the property was stolen, it is necessary only that the state offer sufficient legal evidence to show a severance of the possession of the owner and an actual possession of the wrongdoer. It is immaterial how short the distance moved, or the length of time he exercised dominion over it. It may constitute larceny if there was a severance of the possession of the owner and an actual possession and removal by the wrongdoer. Phelps v. State, 6 Ala.App. 58, 60 So. 537; Molton v. State, 105 Ala. 18, 16 So. 795; Blakeney v. State, 244 Ala. 262, 13 So.2d 430; Arthur v. State, 38 Ala.App. 490, 93 So.2d 793.”
Judge Cates, in Stanley v. State, 46 Ala.App. 542, 245 So.2d 827, stated the trial court “in a receiving case approved inferring the requisite scienter from recent possession of stolen goods.”
This Court is of the opinion that the facts above set forth show the material elements of the offense charged, and that the evidence being in conflict, the trial judge properly submitted this matter to the jury for their determination. Paul v. State, 48 Ala.App. 396, 265 So.2d 180, cert. denied 288 Ala. 747, 265 So.2d 185; Johnson v. State, supra; Coe v. State, 53 Ala.App. 457, 301 So.2d 223; Hinkle v. State, 50 Ala.App. 215, 278 So.2d 218; Carroll v. State, Ala.Cr.App., 338 So.2d 432.
II
Appellant contends that the trial court abused its discretion by allowing him only a ten minute recess before the appellant took the stand to testify.
We are of the opinion that where, as here, counsel had been appointed sometime prior to trial and was familiar with the testimony offered, no abuse of discretion is here shown. There was no question involved here concerning the right to interview witnesses prior to trial. We are of the opinion that no abuse of discretion was here shown.
We have carefully examined this record, as required by law, and find no error therein. The judgment is due to be and the same is hereby
AFFIRMED.
All the Judges concur.

. The officers stated that a confidential informant told them,to be on the lookout for a red and white pickup truck which contained some missing merchandise.