TYSON, Presiding Judge.
The indictment charged the appellant, Maurice Lamar, with possession of heroin. The jury found the appellant guilty as charged and fixed punishment at ten years imprisonment.
Lieutenant William Zachry of the Selma Police Department testified that in November of 1975, an informer named Mark E. Smith was working under his supervision. Smith was employed by Radio Shack in Selma, Alabama, and had worked as an informer for Lieutenant Zachry on several occasions. Smith testified that on November 11, 1975, the appellant and one Ronald Hampton purchased a C.B. radio and a police scanner at Radio Shack. After the purchase the appellant and Hampton had Smith install the equipment in a green Buick. Before installing this equipment, Smith told the appellant that “It was good to have those kids out of there [the garage] and that when I went home I was going to relax and smoke some marijuana” (R. p. 123). The appellant, according to Smith, said he could sell Smith some heroin and that Smith could make a profit reselling the heroin (R. p. 124). Smith testified that the appellant then set up a transaction between himself and Smith. The agreement was that the appellant would trade some heroin to Smith for some marijuana to make sure Smith was “cool” (R. p. 126). Smith and Lieutenant Zachry met that same day and Zachry gave Smith the marijuana for the exchange. The next day the proposed exchange took place at Radio Shack between Hampton and Smith. The appellant was not present. Smith testified that he turned the heroin over to Zachry that afternoon.
On November 15, 1975, according to Smith, Hampton and the appellant came to Radio Shack and showed Smith a matchbox which contained “silver packets” (R. p. 132). Smith testified that the appellant told him he could buy the heroin for $100.00 per spoon. A sale was arranged for 7:00 p. m., later that evening, at the Selma Mall. Smith testified that he met with Zachry shortly before 7:00 p. m. near the Selma Mall. Zachry testified that he searched Smith at this time to make sure he was not carrying any drugs. Zachry then gave Smith $35.00 to buy the heroin because, according to Zachry, more funds could not be obtained in so short a time (R. p. 65). Smith testified that he crossed the street to walk over to the Selma Mall, but saw Hampton under the overhang at Hardy’s. Smith walked over to Hampton and the two of them went to the back of Hardy’s where they joined the appellant in a green Buick. Smith got in the back seat of the car and the three of them drove to the back parking lot of the Mall. Smith testified that after the appellant stopped the car, Hampton handed him two foil packets. Smith stepped outside the car to examine the contents of the packets under the parking lot *679 lights. Smith then lit his cigarette with a butane lighter, which was to signal Zachry that the heroin had been exchanged. Lieutenant Zachry drove up to the appellant’s car in an unmarked vehicle. After coming to a stop, according to Zachry, the appellant drove away at a high rate of speed. Zachry radioed the back-up unit and both- police vehicles pursued the appellant. The backup unit was in front of Zachry’s vehicle during the chase and radioed back to Za-chry that a brown bag had been thrown out of appellant’s car. The bag was never found.
The appellant’s car was found abandoned a few minutes later by another police vehicle in the rear of the Coleman Apartments. Zachry had a check made on the car’s registration and found that it was registered to one Ralph Hill, the appellant’s stepfather. Several foil packets, according to Zachry, could be seen on the rear floorboard of the car.
Zachry had the vehicle impounded and towed to police headquarters. At headquarters Zachry made a cursory search of the vehicle in which he found several small foil packets on the rear floorboard. The packets contained a substance which was identified as heroin by Mary Alice Rhodes, State Toxicologist. The appellant turned himself in several days later.
I
Appellant contends that the trial court erred in refusing to grant his motion to suppress the evidence. According to appellant, the search of his automobile was unlawful in the absence of a search warrant. The validity of the search must be viewed in light of the facts presented. The record discloses essentially a combination of four factors: (1) the prearranged transaction between the appellant and Smith with police supervision; (2) the signal by Smith that the transaction had taken place and the heroin was present; (3) the flight of appellant and the hot pursuit by the officers; and (4) the abandonment of the automobile by the appellant.
In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, the United States Supreme Court recognized “a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.” It is clear that the officers in this case had probable cause to believe that the abandoned vehicle contained heroin from what the record discloses. The facts and circumstances within the officers’ knowledge and “of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief” that heroin was in the automobile. Carroll, supra. Therefore, probable cause, coupled with the mobility of the vehicle, brings this case within the recognized exceptions to the warrant requirement. Daniels v. State, 290 Ala. 316, 276 So.2d 441.
Appellant contends that even if a search warrant was not required at the spot where the automobile was abandoned, one was required at the police station where the search was conducted. In Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), the United States Supreme Court held that the probable cause factor that exists at the scene exists at the station house. Therefore, the search of appellant’s automobile at the police station was proper.
II
Appellant contends that the trial court erred when counsel for both parties were asked, in the presence of the jury, if there was any objection to the stipulation that the jury could separate. The record shows that prior to trial it had been agreed that the jury could separate and this agreement was reached outside the jury’s presence (R. p. 65). Then, during the course of the trial the following occurred (R. p. 102):
“THE COURT: I think we will break for lunch now. Do you have any objection to *680 the stipulation about the jury separating continuing through the course of the trial?
“MR. GREENE: None from the State.
“MR. SMITH: No, sir.”
On the reconvening of court, the defense moved for a mistrial on the grounds that the court had brought up separation in the presence of the jury. The record shows that the question of separation was agreed to by all outside the jury’s presence. Appellant contends that Title 30, Section 97(1), Code of Alabama 1940 (Recompiled 1958), prohibits the court from asking counsel for either party whether or not they will consent to jury separation in the presence of the jury. Although Title 30, Section 97(1) does not apply to Dallas County where this case was tried, an analogous common law rule is applicable. The purpose of Title 30, Section 97(1) was outlined by the Alabama Supreme Court in Kennedy v. State, 291 Ala. 62, 277 So.2d 878 (1973), as follows:
. . (1) to prevent the defendant from being prejudiced by the jury’s knowledge that he has refused to consent to their separation; and (2) to prevent the jury from showing undue favoritism to a defendant by reason of knowledge that he has consented to their separation.
The first reason listed above is obviously moot in this case since counsel for appellant had agreed to jury separation and no prejudice could result from the jury being aware of his consent. As to the second reason, how could something which might lead the jury to show “undue favoritism” to the appellant be grounds for reversing a conviction? Such thus becomes grounds for rank speculation. Therefore, clearly, if this be error, it was harmless (Alabama Rules of Appellate Procedure, Rule 45).
Ill
Appellant contends that the trial court erred in refusing to give appellant’s jury charge No. 10, stating that, “The State must prove its charge and prove it beyond a reasonable doubt by the evidence. The assertions of counsel are not evidence.”
A careful examination of the record shows that the part of the requested charge stating, “The assertions of counsel are not evidence,” was not covered by the trial court’s oral charge to the jury. This charge should have been given, and its refusal is error. Lane v. State, 85 Ala. 11, 4 So. 730; Morse v. State, 49 Ala.App. 203, 269 So.2d 916.
Because of this error, it follows that the judgment below is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.