The two-count indictment charged Casby Ingram with: first, grand larceny; and second, buying, receiving, concealing, etc., one 1964 Chevrolet Impala automobile, the personal property of Johnny Self. At the close of the State's evidence, Count I, for grand larceny, was dismissed, and the cause went to the jury under Count II. The jury found the appellant "guilty as charged," and the trial court entered judgment, which set sentence at five years imprisonment in the penitentiary.
Johnny Rae Self stated he was a resident of Alexander City, Alabama, and on December 21, 1976, he was visiting his sister-in-law at St. Margaret's Hospital in Montgomery. Mr. Self indicated that he parked his car in front of St. Margaret's Hospital shortly after 7:00 o'clock that morning and came back out about 12:00 noon to get something out of his car. He reentered the hospital and did not come to his car again until sometime after lunch.
About 2:30 or 3:00 o'clock that afternoon, Mr. Self indicated that he and his wife walked out to where he had left his car and it was gone. He stated that he then went back into the hospital and telephoned the Montgomery police, who arrived in about ten to fifteen minutes. In reporting the missing automobile, Mr. Self described it as a 1964 white Chevrolet Impala with a "reddish" interior. He stated that there was a "skinned" place on the driver's side of the door. Mr. Self indicated that he was employed by Russell Mills. He stated that he was contacted by Montgomery police on the following Thursday or Friday to come to pick the car up.
Montgomery Traffic Officer Jeffery L. Roy stated he answered a call from St. Margaret's Hospital on the afternoon of December 21, 1976. He indicated that he received a report from Mr. Johnny Self of a missing 1964 two-door, white, Chevrolet Impala with a red interior. This missing automobile report was then dispatched to all units in Montgomery that afternoon.
Montgomery Detective Ricky Mobley stated that on the afternoon of December 22, 1976, he was in the area of Day and Greyhound Streets in the City of Montgomery. He indicated that he saw a fellow officer direct a 1964 Chevrolet Impala to stop. He stated that he pulled his vehicle in front of the Chevrolet Impala, causing it to stop. He stated that the license tag number was BZJ 081 and that the vehicle was a two-door 1964 white Chevrolet Impala with red interior. The description matched that which was turned in to Montgomery police by Mr. Johnny Self.
Detective Mobley related that he then arrested the driver, who was Casby Ingram, the appellant. Detective Mobley stated that another black male, one James Edward Philips, was seated on the passenger's side of the front seat at the time.
James Edward Philips stated that he lived in Montgomery on Kilby Drive, Wesley Hill, in December, 1976. Mr. Philips stated that during the afternoon of December 22, 1976, Casby Ingram picked him up at his home, that he was driving a 1964 white, two-door Chevrolet Impala. He stated that he had not previously seen Ingram in this vehicle. From the record (R. p. 24):
 Q. That's the first time you had seen him in that car?
"A. Yeah, uh-huh.
"Q. Where did you all go?
 "A. We went here to my house, and then come on Day Street, and then the police came then, you know, from by the time he gets to my house on Day Street, we wasn't going nowhere then, the police stopped us then.
"Q. The police stopped you then?
"A. Yes.
 "Q. I'll ask you whether or not you had asked Casby Ingram where he got that automobile?
"A. No, he said his cousin got it.
"Q. Said what?
"A. His cousin's.
"Q. Said it was his cousin's?
"A. No. *Page 763 
"Q. Did you ask him anything else about it?
"A. No.
"Q. Did you tell them down at police headquarters?
"A. Yeah, uh-huh."
On cross-examination Philips stated that he could not drive an automobile himself, nor did he know how Ingram got the vehicle. He stated that he had not been in the vicinity of St. Margaret's Hospital the previous day, December 21, 1976.
At the conclusion of the State's evidence, the appellant moved to exclude same, stating that the State failed to prove a prima facie case of feloniously taking and carrying away the vehicle. After this motion was denied, the appellant rested without presenting any evidence in his behalf.
 I
Appellant contends the State failed to prove a prima facie case, hence, the overruling of his motion to exclude was error.
In Johnson v. State, 41 Ala. App. 351, 132 So.2d 485, Judge Price stated:
 "To establish the offense of buying or concealing stolen property it must appear that the property was stolen; that accused bought, received or concealed it knowing that it had been stolen; and that she had no intention of returning it to the owner. Moore v. State, 26 Ala. App. 607, 164 So. 761; Trail v. State. 39 Ala. App. 467, 103 So.2d 833.
 "The corpus delicti may be proven by circumstantial evidence as well as by direct proof. Coates v. State, 36 Ala. App. 371, 56 So.2d 383; Wright v. State, 17 Ala. App. 621, 88 So. 185.
 "To meet the burden of proving that the property was stolen, it is necessary only that the state offer sufficient legal evidence to show a severance of the possession of the owner and an actual possession of the wrongdoer. It is immaterial how short the distance moved, or the length of time he exercised dominion over it. It may constitute larceny if there was a severance of the possession of the owner and an actual possession and removal by the wrongdoer. Phelps v. State, 6 Ala. App. 58, 60 So. 537; Molton v. State, 105 Ala. 18, 16 So. 795; Blakeney v. State, 244 Ala. 262, 13 So.2d 430; Arthur v. State, 38 Ala. App. 490, 93 So.2d 793."
Judge Cates, in Stanley v. State, 46 Ala. App. 542,245 So.2d 827, stated the trial court "in a receiving case approved inferring the requisite scienter from recent possession of stolen goods."
In Wood v. State, 18 Ala. App. 654, 94 So. 256, we find:
 ". . . [T]he proof of the corpus delicti does not depend upon the place from whence the goods were stolen, or who stole them. That they were stolen by somebody is all that is required to establish the corpus delicti, and there was ample evidence for this purpose. . . ."
The Court is of the opinion that the facts above set forth show the material elements of the offense charged. The trial judge properly submitted this matter to the jury for their determination. Paul v. State, 48 Ala. App. 396, 265 So.2d 180, cert. denied 288 Ala. 747, 265 So.2d 185; Johnson v. State,41 Ala. App. 351, 132 So.2d 485; Coe v. State, 53 Ala. App. 457,301 So.2d 223; Hinkle v. State, 50 Ala. App. 215, 278 So.2d 218; andCarroll v. State, (Ala.Cr.App.) 338 So.2d 432.
 II
Appellant asserts that the trial court improperly overruled his objection to the question, "What happened to the car since then"? (R. p. 13)
We do not feel that any error is shown by the answer given in the case at bar, namely, that the car was picked up by the owner, Johnny Self, some two or three days later at a service station in Montgomery, and that he had subsequently traded the vehicle prior to the time of trial.
 III
During closing argument, the following transpired (R. pp. 31-32): *Page 764 
"(MR. POOL CONTINUES HIS CLOSING ARGUMENT).
 "MR. HAYES: I object to that, Your Honor, that's placing the burden of proof on the defense, and the burden of proof is never on the defense.
"THE COURT: Sustained.
 "MR. HAYES: Your Honor, I would move at this time for a mistrial.
"THE COURT: Motion denied.
 "MR. HAYES: Request you ask the jury to disregard that statement by Mr. Pool.
 "THE COURT: The jury will disregard the statement by Mr. Pool regarding the absence of the evidence by the defendant.
"(MR. POOL CONTINUES HIS CLOSING ARGUMENT.)"
The appellant asserts the overruling of his motion for a mistrial was error. We do not agree.
As may be seen by the foregoing colloquy, the trial court immediately sustained the appellant's objection and instructed the jury to "disregard the statement by Mr. ______ regarding the absence of the evidence by the defendant." Prompt action of the trial court, instructing the jury to disregard such remark, removed any possible prejudicial effect that such a statement may have had. Thus, no error is shown. Adair v. State,51 Ala. App. 651, 288 So.2d 187; Retowsky v. State, Ala.Cr.App.,333 So.2d 193; Napier v. State, Ala.Cr.App., 337 So.2d 62;Ellenburg v. State, Ala.Cr.App., 353 So.2d 810.
In view of this strong admonition by the trial judge, as shown by the colloquy, we are clear to the conclusion that reversible error is not here shown. Troup v. State, 32 Ala. App. 309, 26 So.2d 611; Massey v. State, 49 Ala. App. 341,272 So.2d 267, cert. denied 289 Ala. 747, 272 So.2d 270, and cases therein cited.
 IV
Finally, appellant's counsel asserts the trial court erred in failing to give his written requested Charge No. 6, which contained the phrase, "The assertions of counsel are not evidence," and cites us to this Court's opinion in Lamar v.State (Ala.Cr.App.) 356 So.2d 677, 1977.
The Supreme Court of Alabama reversed this Court on this very question. S.Ct. 2769, In re Lamar v. State, 356 So.2d 680,1977, pointed out that it is not necessary in every criminal case that such a charge be given to the jury.
Appellant also asserts as error the giving of the following charge at the request of the State of Alabama (R. p. 51):
"STATE'S REQUESTED CHARGE
 "I charge you ladies and gentlemen of the jury that the unexplained possession of recently stolen property raises an inference that the possessor knew that the property was stolen and the jury may consider that inference."
The latest expression of the law on this subject is the opinion of the Supreme Court of Alabama, speaking through Mr. Justice Bloodworth in Buckles v. State, 291 Ala. 359,280 So.2d 823.
As may be seen in examining this opinion and the prior opinions of the Court of Criminal Appeals on this subject, the error is in using the expression "the burden or onus of explaining such recent possession" being placed upon the appellant, citing Barnes v. United States, 412 U.S. 837,93 S.Ct. 2357, 37 L.Ed.2d 380.
The use of the term that such unexplained possession is a circumstance or inference for the jury's consideration is proper. Buckles, supra, and cases hereinabove cited.
At the conclusion of an extensive oral charge, each side answered, "Satisfied" (R. p. 38), and the trial court then gave four written requested charges. We are of the opinion that the remaining refused charges were either fairly and adequately covered in the trial court's oral charge, or the written charges given at the request of the appellant. Thus, such refusals were proper. § 12-16-13, Code of Alabama 1975 (formerly Title 7, Section 273, Code of Alabama 1940). *Page 765 
We have carefully examined this record and find same to be free of error. The judgment is due to be and the same is hereby
AFFIRMED.
All the Judges concur.